WILLIE CROSS *et al.*, Plaintiffs-Appellants, *v.* CHICAGO HOUSING AUTHORITY, Defendant-Appellee.—(WILLIE CROSS *et al.*, Plaintiffs-Appellants, *v.* WELLS FARGO ALARM SERVICES *et al.*, Defendants-Appellants.)

First District (2nd Division)   Nos. 77-1887, 78-380 cons.

Opinion filed July 17, 1979.—Rehearing denied August 28, 1979.

John D. Hayes and Associates, of Chicago (William L. Barr, Jr., of counsel), for appellants Willie and Minnie Cross.

Frank Glazer, Ltd., of Chicago (Frank Glazer and William A. Murphy, of counsel), for appellants Wells Fargo Alarm Services, *et al.*

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll, Donald E. Stellato, and David A. Novoselsky, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

These consolidated appeals arise out of the plaintiffs' negligence suit against defendant Chicago Housing Authority (CHA) and defendants Wells Fargo Alarm Services, Wells Fargo Security Guard Services, Wells Fargo Company, Wells Fargo Alarm Services, Inc., and Baker Protective

Services, Inc. (hereinafter Wells Fargo-Baker), for personal and pecuniary injuries they suffered when plaintiff Willie Cross was attacked by unknown assailants on CHA premises for which Wells Fargo-Baker had contracted with CHA to provide security services. Plaintiffs appeal an order of the circuit court of Cook County dismissing counts IV and V of their complaint against defendant CHA (No. 77-1887). Pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308), defendants Wells Fargo-Baker appeal an order denying their motion to dismiss counts I, II, III, and VI of the plaintiffs' complaint (No. 78-380). The issues presented for our review are (1) whether the defendant CHA had either a common-law duty or had voluntarily assumed a duty to protect plaintiff Willie Cross against criminal attacks by third persons, and (2) whether defendants Wells Fargo-Baker had voluntarily assumed such a duty.

Counts IV and V of the plaintiffs' complaint against defendant CHA allege that prior to December 21, 1970, there were repeated incidents of criminal activity in the area of Governor Henry Horner Housing Project located at 141 North Wolcott, Chicago, Illinois, and owned, operated, and managed by defendant CHA; that defendant CHA had entered into a contract with defendants Wells Fargo-Baker for the purpose of protecting the property and persons on those premises; that in accordance with this contract, guards were to be provided between the hours of 9 a.m. and 1 a.m., but were not to be provided between the hours of 1 a.m. and 9 a.m.; that as a result of this part-time security service the premises became more dangerous between the hours of 1 a.m. and 9 a.m., that defendant CHA knew or should have known that such part-time security service created a dangerous condition by increasing the risk of criminal attack during the hours of 1 a.m. to 9 a.m., while the plaintiff did not have such knowledge; and that plaintiff Willie Cross had been attacked by unknown assailants at 1:15 a.m. while entering the defendant's premises. The gravamen of the plaintiffs' complaint alleges that the defendant CHA was negligent in creating a highly dangerous condition on the premises between the hours of 1 a.m. and 9 a.m. by providing guard service only between the hours of 9 a.m. and 1 a.m., in failing to warn visitors and other persons rightfully on the premises that security service was not provided between the hours of 1 a.m. and 9 a.m. and that a highly dangerous condition existed during those hours, in failing to provide a locking door to the main lobby of the premises, and in failing to take any action to correct this alleged highly dangerous condition after having notice of its existence.

Counts I, II, III, and VI allege that defendants Wells Fargo-Baker had contracted with defendant CHA not only to provide armed security guards between the hours of 9 a.m. and 1 a.m., but also had contracted to

evaluate the defendant CHA's security needs on a continuing basis, to assign a project supervisory officer to maintain a liaison with the CHA on a daily basis, and to publish and distribute specific job instructions and requirements to its guards and to the CHA staff. Plaintiffs allege that the defendants' negligent and /or wilful and wanton failure to perform these latter contractual duties allegedly undertaken for the plaintiffs' benefit proximately caused their injuries. Plaintiffs further allege that the period between the hours of 1 a.m. and 9 a.m. became more dangerous as a result of the part-time security service, that the defendants knew or should have known of this increasingly dangerous condition, and that the defendants' failure to notify CHA of this condition, and of the need for security service between the hours of 1 a.m. and 9 a.m. proximately caused their injuries.

The defendants' motions to dismiss asserted that they had no duty to protect plaintiff Willie Cross from criminal assaults by third persons. The trial court granted defendant CHA's motion to dismiss Counts IV and V and denied defendants Wells Fargo-Baker's motion to dismiss Counts I, II, III, and VI. It is from these orders that the plaintiffs and defendants Wells Fargo-Baker appeal.

## I.
## A.

■■ The plaintiffs' complaint is in negligence. As such, it must set out the existence of a duty owed by the defendant to the plaintiffs, a breach of that duty, and an injury resulting from that breach. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.

Of pertinence to this appeal is section 302B of the Restatement (Second) of Torts (1965), which provides:

> "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

However, comment (*a*) of section 302B refers to comment (*a*) of section 302, which states:

> "If the actor is under no duty to the other to act, his failure to do so may be negligent conduct within the rule stated in this Section, but it does not subject him to liability, because of the absence of duty."

The above is also true under sections 448 and 449 of the Restatement also relied on by the plaintiffs. (See *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 556, 328 N.E.2d 538.) Therefore, before reaching the question of the applicability of any of these Restatement sections, it must first be

determined whether there exists a duty owed by the defendant CHA to the plaintiffs for their protection.

■■ The existence of a duty is a question of law to be determined by the court. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535; *Fancil*, at 555.) Although the existence of a legal duty requires that the occurrence be reasonably foreseeable, and more than a mere possibility (*Cunis*, at 375-76; *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 410, 371 N.E.2d 69), the imposition of a duty does not depend on foreseeability alone (*Cunis*, at 375; *Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 100, 302 N.E.2d 207, *appeal denied* (1973), 54 Ill. 2d 599). Rather, in determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must also be taken into account. *Barnes*, at 29; *Trice*, at 100.

Relying on *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47; *Mims v. New York Life Insurance Co.* (1971), 133 Ill. App. 2d 283, 273 N.E.2d 186; *Johnston v. Harris* (1972), 387 Mich. 569, 198 N.W.2d 409; and the aforementioned sections of the Restatement, plaintiffs first contend that the CHA had a common-law duty to protect plaintiff Willie Cross from the criminal attacks of the unknown assailant. We disagree.

■■■ A duty to protect one against the criminal attacks of third persons exists only where the actor, whose negligent conduct creates the risk, is under a special responsibility toward the one who causes the harm, or where a special relationship exists between the negligent actor and the person suffering the harm. (*Fancil*, at 559; Restatement (Second) of Torts §302B, comment (e) (1965); Restatement (Second) of Torts §302B, comment (e) (1965).) The special relationships between the actor and the person causing the harm giving rise to such a duty include that of a parent-child, a master-servant, a possessor of land-licensee, and a person taking charge of persons having dangerous propensities. (Restatement (Second) of Torts §§316-19 (1965).) Plaintiffs do not allege the existence of any such relationship between the defendant and the unknown assailant. Those special relationships between the actor and the person suffering the harm include a common carrier-passenger, a business invitor-invitee, and an innkeeper-guest. (Restatement (Second) of Torts §314A and §302B, comment (e)(B) (1965).) A landlord-tenant relationship is not one which creates such a duty in this jurisdiction. (See *Martin*, at 410, and *Trice*, at 99.) Thus, although a lessor who retains control of a part of the premises which a lessee is entitled to use is liable to that lessee, and others rightfully on the premises under the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and could have made it safe (Restatement (Second) of Torts §360 (1965), this duty is to

maintain and repair, rather than a duty to police (*Trice*, at 100). It was for this reason that we affirmed the dismissal of the plaintiff's complaint in *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536, in which the plaintiff alleged the absence or inadequacy of the security measures on the defendant's premises.

Although the plaintiffs here allege the negligent creation of a condition by the defendant's failure to provide security service between the hours of 1 a.m. and 9 a.m., and by the defendant's failure to warn of such condition, we are of the opinion that those allegations are similar to those in *Smith*. Moreover, the cases relied on by the plaintiffs for the proposition that the defendant had a common-law duty to provide locking doors to its premises to protect against criminal assaults are distinguishable.

In *Johnston* the plaintiff alleged that the assault and robbery, occurring as he returned to his apartment building, were proximately caused by his landlord's failure to provide adequate lighting and door locks. The trial court granted the defendant's "motion for a directed verdict of no cause of action." (*Johnston*, at 572.) The court of appeals concluded, from a review of the record, that the plaintiff had established a *prima facie* case as to duty and breach, but found no adequate proof of proximate cause, and, therefore, affirmed the trial court. The issue before the supreme court was solely whether the defendant's negligence was the proximate cause of the plaintiff's injuries. Accordingly, that court considered only the foreseeability of the plaintiff's injuries. As noted previously, in determining whether a duty exists, the foreseeability of the injuries alone is not sufficient. Moreover, our supreme court has found that plaintiff's *prima facie* case establishing the defendant's duty in *Johnston* was predicated on the special relationship between a landlord and tenant recognized in that jurisdiction, but not recognized in this jurisdiction. See *Fancil*, at 559.

In *Mims*, the defendant ordered one of its maintenance men to inspect the plaintiffs' apartment without notice to the plaintiffs. Plaintiffs had locked their door prior to leaving but found it unlocked upon their return and also found several valuable items missing. In distinguishing the *Mims* situation from the situation presented in *Smith*, which we have found analogous to the situation presented here, the *Smith* court pointed out that it was the affirmative act of defendant's employee in unlocking the previously locked door which make it possible for the thief to enter the premises. (See *Smith*, at 970.) Thus, the liability in *Mims* was not based on a breach of a general duty imposed on the landlord, but, rather, was based upon the affirmative negligence of the defendant's employee in unlocking the plaintiffs' door and leaving it unlocked.

In *Stribling*, plaintiffs were tenants whose apartment was burglarized

on three separate occasions. Each time the thieves broke through a wall which plaintiffs' apartment shared with a vacant, adjacent apartment. This court held that the defendant owed plaintiffs a duty to guard against the second and third burglaries because "after defendants had notice of the original burglary and the means used in effecting the burglary, the fact that another burglary could happen in the same fashion became eminently foreseeable." (*Stribling*, at 556.) However, the *Stribling* court found no such duty as to the first burglary, which the plaintiffs alleged was due to the defendant's failure to secure the vacant apartments when it knew of unauthorized persons on the premises. The facts in *Stribling* presented what the court in *Smith* described as "bizarre circumstances" which created a duty upon the defendant to take action which would have prevented "further thefts in the same, unusual fashion." *Smith*, at 970.

■■ Unlike the allegations in *Mims* and *Stribling*, the allegations of the plaintiffs' complaint in the instant case do not establish an affirmative act on the part of the defendant CHA which created a specific risk where none would have otherwise existed (*Mims*), or that the attack upon plaintiff Willie Cross occurred as one in a series of unusual occurrences all taking place in the same location and in the same unusual manner (*Stribling*). Moreover, plaintiffs have not alleged a special relationship between the defendant CHA and the plaintiffs which would impose upon the defendant a duty to control the conduct of third persons to such a degree as to prevent them from causing the plaintiff physical harm. Plaintiffs' complaint therefore fails to allege facts establishing such a common-law duty. See *Smith v. Chicago Housing Authority*; *Trice v. Chicago Housing Authority*; and *Pippin v. Chicago Housing Authority* (1978), 58 Ill. App. 3d 1029, 374 N.E.2d 1055, *appeal allowed* (1978), 71 Ill. 2d 614.

### B.

However, a duty not otherwise existing at law may be voluntarily assumed by a party, in which case, it must be performed with a reasonable degree of care, skill, and competence. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 85-86, 199 N.E.2d 769.

Defendant CHA and defendant Wells Fargo-Baker entered into a contract which in pertinent part states:

> "WHEREAS, the Contractor [Wells Fargo-Baker] is engaged in the business of furnishing armed guard watchmen and other protective services for the purpose of guarding the property and the protection of persons; and
>
> WHEREAS, the Authority is desirous of securing such services

for the purpose of guarding the property and protecting persons in the area located in and around the Henry Horner Homes, a housing development of the Authority; THEREFORE, IT IS MUTUALLY AGREED * * *."

Plaintiffs allege that defendant CHA undertook by this contract to provide security guards for the benefit of persons in the area located in and around the premises on which plaintiff Willie Cross was attacked. Plaintiffs further allege that the manner in which this security service was provided actually increased the incidence of violence during the period in which plaintiff Willie Cross was attacked, that this fact was known to defendant CHA, and that, with such knowledge, the defendant CHA failed to warn visitors of this danger on its premises, failed to provide a locking door to its premises, and failed to take any action to correct this highly dangerous condition. Relying on *Pippin v. Chicago Housing Authority* (1978), 58 Ill. App. 3d 1029, 374 N.E.2d 1055, *appeal allowed* (1978), 71 Ill. 2d 614, the plaintiffs contend that their complaint alleges facts establishing a duty voluntarily assumed by defendant CHA extending to plaintiff Willie Cross.

In *Pippin*, plaintiff's deceased was killed while guards provided by defendant Interstate Service Corporation were on the premises owned by defendant CHA. As here, the defendants in *Pippin* had entered into an agreement for the protection of persons on the CHA premises. The trial court granted summary judgment in favor of the defendant CHA and the plaintiff appealed. This court determined that, although the defendants had no common-law duty to protect the deceased, they had assumed a duty by the terms of their contract to exercise reasonable care in protecting persons lawfully on the premises from foreseeable criminal attacks and other foreseeable dangers. Finding genuine issues of material fact from which the jury could reasonably find that liability should be imposed on one or both of the defendants, we therefore reversed the summary judgment and remanded the case for a new trial.

However, the defendant points out that the plaintiffs' deceased in *Pippin* was killed in the presence of the guards, whereas in the instant case plaintiff was injured during the time guard service was not being provided. Relying on *Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396, and *Stelloh v. Cottage 83* (1964), 52 Ill. App. 2d 168, 201 N.E.2d 672, the defendant CHA argues that the plaintiffs' claim rests upon an alleged failure to go beyond the scope of the duty assumed (*i.e.*, a failure to provide security service between the hours of 1 a.m. and 9 a.m.), and that, therefore, the plaintiffs' failure to allege that they relied upon the defendant to perform those extended duties or that they were parties to some relationship which required the defendant to extend the assumed duty to cover them is fatal to their cause of action.

At the outset we note that defendant CHA's motion to dismiss admits as true for the purpose of the motion, all facts well pleaded together with all reasonable inferences which could be drawn from those facts. (*Fancil,* at 554.) However, as said in *O'Fallon Development Co. v. Ring* (1967), 37 Ill. 2d 84, 88, 224 N.E.2d 782, "* * * a motion to dismiss admits facts well pleaded; but it admits them only for the purpose of determining whether, as a matter of law, those facts state a claim upon which relief may be granted."

We find the defendant CHA's reliance on *Stelloh* and *Hubbard* misplaced for the simple reason that the defendant's characterization of the plaintiffs' claim as one of nonfeasance, or negligence beyond the scope of the defendant's undertaking, is erroneous.

First, although plaintiffs allege that the defendant CHA was negligent in "failing to take any action to correct this highly dangerous situation after having notice of its existence," nowhere in the plaintiffs' complaint do they allege that this corrective action required defendant CHA to provide security service during noncontract hours. Rather, the plaintiffs allege that the limited guard service created the dangerous condition on the defendant's premises, the creation of which in turn imposed on the defendant the duty to warn its visitors of the dangerous condition, to provide a locking door to its premises, and to take other unspecified corrective action. These latter duties are in no way limited, or affected, by the defendant's limited undertaking to provide guard service, other than in the creation of the dangerous condition giving rise to them. Therefore, these duties extend to persons such as plaintiff Willie Cross. The pleading asserts that the negligence falls within the scope of defendant's alleged general undertaking to provide protection for persons on its premises.

Moreover, unlike in *Hubbard*, where the defendant had no control over the premises on which the plaintiff's deceased was killed and had not created the condition causing the injury, plaintiffs here allege both the control of the defendant CHA over the property, and the creation and neglect of a dangerous situation on that property. Unlike *Stelloh*, the plaintiffs further allege that the defendant CHA was aware of the dangerous condition it had created and neglected, and that plaintiff Willie Cross was not aware of this condition, ostensibly due to the defendant's negligent failure to warn him of it.

■◼ In sum, if, as the plaintiffs allege, the defendant CHA's failure to provide security service between the hours of 1 a.m. and 9 a.m. created a known dangerous condition which extended beyond the time during which security service was provided, we are of the opinion that the defendant had a duty which also extended beyond the time the guard service was provided to correct or alleviate this condition. We therefore find that counts IV and V of plaintiffs' complaint state a cause of action

against defendant CHA. Accordingly, we reverse the trial court's order dismissing those counts and remand for further proceedings.

## II.

The parties agree that any duty owed by defendants Wells Fargo-Baker to the plaintiffs may only arise out of these defendants' contract with defendant CHA in which they agreed to provide security service between the hours of 9 a.m. and 1 a.m., to evaluate CHA's security needs, and to maintain a daily liaison with CHA. Although this court has determined that a guard service may be found to have contractually assumed a duty to exercise reasonable care to protect persons from foreseeable criminal attacks (*Pippin*), we are of the opinion that none of the foregoing duties were assumed by defendants Wells Fargo-Baker for the protection of such persons as Willie Cross who was attacked on CHA's premises at 1:15 a.m.

First, although the defendants' contract expresses a general intent to protect persons on CHA's property, this purpose and Wells Fargo-Baker's duties are limited by their specific undertaking to provide guard service only between the hours of 9 a.m. and 1 a.m. These defendants did not assume a duty to provide guard service for the protection of persons on the premises between the hours of 1 a.m. and 9 a.m., and, therefore, did not assume such a duty for plaintiff Willie Cross' benefit. However, the plaintiffs also allege that Wells Fargo-Baker's failure to evaluate, maintain a daily liaison, and advise defendant CHA of its security needs created a dangerous condition during the hours of 1 a.m. and 9 a.m. which these defendants knew about and which proximately caused the plaintiffs' injuries.

At the outset, we fail to see how Wells Fargo-Baker can be said to have assumed a duty to evaluate CHA's security needs during the hours of 1 a.m. and 9 a.m. when they had not contractually assumed a duty to even be on the premises at that time. For this same reason, we also fail to see how these defendants knew or should have known of the alleged dangerous condition existing on the premises during that time. Therefore, although the contract does not expressly limit the time in which such evaluations were to be made, we are of the opinion that it must be construed to circumscribe these defendants' assumption of this duty to the hours of 9 a.m. to 1 a.m. Under those circumstances, we do not find that defendants Wells Fargo-Baker assumed a duty which extended to protect plaintiff Willie Cross.

However, assuming the truth of the plaintiffs' allegations that Wells Fargo-Baker assumed a duty to evaluate CHA's security needs and had knowledge of the alleged dangerous condition between the hours of 1 a.m. and 9 a.m., since these defendants did not provide such evaluations

during that time, plaintiffs' complaint must be construed as alleging their nonfeasance, rather than misfeasance. In this regard, we find our decision in *Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396, controlling.

In *Hubbard*, plaintiff's decedent was killed by an explosion while working as a pellet mill operator at Garvey Grain, Inc. The defendant insurance companies had afforded coverage to Garvey for such explosions and had made seven inspections of the plant prior to the explosion in question. The reports of these investigations allegedly described the machinery within the Garvey plant as unsafe. Although the defendants recommended that Garvey improve or eliminate the unsafe conditions, Garvey failed to do so. Plaintiff's complaint alleged that the defendant insurance companies were negligent in failing to follow through on their inspections by failing to compel Garvey to correct the unsafe conditions they had reported. The trial court dismissed the plaintiff's complaint. In affirming the dismissal, this court said:

> "Defendants were merely the fire insurers of Garvey's properties. Plaintiff did not allege any control which these defendants might have over the premises on which Hubbard was killed. Plaintiff did not allege Garvey or its employees relied on defendants to force Garvey to provide safe working conditions. Plaintiff's allegation of negligence is based on a failure of defendants to act—nonfeasance.
>
> * * * In discussing liability for nonfeasance, this court, in *Nelson*, noted nonfeasance in connection with a gratuitous undertaking would not give rise to liability unless the beneficiaries of the undertaking had relied on its performance. [Citation.] * * *
>
> * * * The only duty imposed on one performing gratuitous safety inspections under *Nelson* is to perform them with due care. So far as we can determine, defendants do not have a duty to take corrective measures to remedy every hazardous condition they discover. They are only liable if the pleadings show they are in some way responsible for the condition. [Citation.]" *Hubbard*, at 670-71.

■ Unlike in *Hubbard*, plaintiffs do allege that the defendants' failure to evaluate and advise CHA of its security needs was responsible for the creation of the allegedly dangerous condition. However, as in *Hubbard*, plaintiffs do not allege that these defendants had control over the premises or the authority to compel CHA to extend the guard service or to institute any other corrective measures. That the plaintiffs could not so allege is apparent from the contract which is devoid of any grant of such authority. Therefore, regardless of any advice which defendants Wells Fargo-Baker may have given CHA, the responsibility for the allegedly

dangerous condition can only be placed with defendant CHA who owned, operated, and managed the premises. Moreover, plaintiffs do not allege that they relied on these defendants' evaluations and advice to CHA for their protection.

The trial court denied Wells Fargo-Baker's motion to dismiss counts I, II, III, and VI of the plaintiffs' complaint and certified the question of these defendants' duty for our review pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308). Error in failing to grant the defendants' motion may be passed upon by this court. (See *Welch v. Davis* (1950), 342 Ill. App. 69, 78, 95 N.E.2d 108, *rev'd on other grounds* (1951), 410 Ill. 130, 101 N.E.2d 547.) For the foregoing reasons, we are of the opinion that counts I, II, III, and VI of the plaintiffs' complaint fail to allege facts establishing a duty assumed by defendants Wells Fargo-Baker for the protection of plaintiff Willie Cross. Accordingly, we reverse the judgment of the trial court denying these defendants' motion to dismiss, and remand the cause with directions to vacate its judgment order and to allow the motion to dismiss the complaint and dismiss the proceedings with respect to defendants Wells Fargo-Baker. See *Howlett v. Scott* (1977), 69 Ill. 2d 135, 145, 370 N.E.2d 1036.

Reversed and remanded with directions.

STAMOS, P. J., and PERLIN, J., concur.