ELIZA PHILLIPS, Adm'r of the Estate of Debra Phillips, Deceased, Plaintiff-Appellant, *v.* CHICAGO HOUSING AUTHORITY, Defendant-Appellee.

First District (4th Division)    No. 79-1898

Opinion filed December 4, 1980.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Abraham W. Brussell, Edward J. McCambridge, and Mary F. Stafford, of counsel), for appellant.

Orner, Wasserman & Moore, of Chicago (Norton Wasserman and H. Elisabeth Huber, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff's decedent, an inhabitant of a Chicago Housing Authority property, was abducted, taken to a vacant floor in the building, raped and murdered. The plaintiff sued, contending that the Housing Authority was negligent in not properly sealing off the floor. The trial court dismissed the complaint with prejudice concluding that a good cause of action was not stated since the Housing Authority has no duty to protect its tenants from criminal assaults by third parties.

We reverse.

The plaintiff, Eliza Phillips, alleged in her complaint in part that:

1. Debra Phillips, the deceased, a minor, was a resident of 1119 North Cleveland, part of the Cabrini Green Housing Project, a public housing development consisting of approximately 78 buildings with 3,573 units owned, operated, maintained and controlled by the Chicago Housing Authority;

2. at the time of Debra's death and for a long time prior thereto numerous incidents of crimes of extreme violence had occurred and taken place on the premises in question in the possession and control of the defendant. These crimes include homicides of all degrees, aggravated assault, rape of adults and minors. These crimes were committed against the tenants and their families and also against their guests, invitees and licensees. In particular, crimes of rape of female minors had taken place in the specific premises of the secured room locked herein;

3. at all times mentioned herein, the defendant knew or by exercise of due care and caution should have known of the existence of these crimes;

4. at some time prior to April 2, 1977, the Chicago Housing Authority closed and locked off certain floors of the aforementioned building and locked the floors to prevent criminals that they knew or in exercise of due care and caution should have known of from entering these floors to conduct their criminal activities and to keep the premises safe for the tenants of the building;

5. on April 2, 1977, Debra was abducted by persons unknown and raped, assaulted and taken to and beaten on one of the floors allegedly secured and was thrown out of one of the windows of said floor, with fatal results;

6. at the aforesaid time and place the Chicago Housing Authority negligently and carelessly committed one or more of the following acts:

    (a) kept the keys to the closed off floors in an area or place that was known to or accessible to the general public or to those criminal persons that the Chicago Housing Authority knew or should have known came on to the premises;

    (b) left the keys to the elevator allowing travel to the closed off

floors accessible to the general public and to those criminals that the Chicago Housing Authority knew or should have known came on to the premises;

(c) failed to inspect the elevator to determine if it had been prevented from stopping at the closed off floors;

(d) failed to inspect the doors to the closed off area to determine if the locks were working so as to bar access to the closed off area;

(e) failed to inspect the elevator to determine if the elevator lock preventing it from going to the closed off floors was working;

(f) failed to warn the tenants that the doors to the closed off areas were in fact unsecured and accessible to the public and to those criminal persons who the Chicago Housing Authority knew or in the exercise of reasonable care should have been known came on to the premises;

(g) failed to warn the tenants that the elevator was not locked and closed off to the floors which were being remodeled and accessible to the general public and to those criminals who the Chicago Housing Authority knew or in the exercise of reasonable care should have known came on to the premises;

(h) failed to provide police protection or security guards in the building although defendant had provided police protection by furnishing security guards for some of the other buildings in the Cabrini Green Project.

7. as a direct and proximate result of one or more of the aforesaid negligent acts of the defendant, Debra was abducted, taken to the closed off area, assaulted, beaten, raped and thrown out of a window.

The trial court dismissed the complaint with prejudice.

Courts in several States, extending the duty of innkeepers to landlords, have found a landlord liable for failing to exercise reasonable care in rendering the premises safe from criminal activity. (See, for example, *Kline v. 1500 Massachusetts Avenue Apartment Corp.* (D.C. Cir. 1970), 439 F. 2d 477; *Trentacost v. Brussel* (1980), 82 N.J. 214, 412 A. 2d 436; Annot., 43 A.L.R.3d 331 (1972); Stalmack, *The Illinois Landlord's Obligation to Protect Persons on His Premises Against the Criminal Activities of Third Persons,"* 1980 Ill. B. J. 668.) Illinois, while recognizing that innkeepers owe to their guests a high degree of care to protect them against assaults by third persons (*Mrziak v. Ettinger* (1975), 25 Ill. App. 3d 706, 323 N.E.2d 796; *Danile v. Oak Park Arms Hotel, Inc.* (1964), 55 Ill. App. 2d 2, 203 N.E.2d 706, *appeal denied* (1965), 31 Ill. 2d 630; *Fortney v. Hotel Rancroft, Inc.* (1955), 5 Ill. App. 2d 327, 125 N.E.2d 544), has refused to extend this duty to landlords. Thus the Illinois Supreme Court in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, held

that the Chicago Housing Authority did not owe a duty either at common law or by virtue of statute to protect a tenant from criminal acts.

Three exceptions, however, exist to this general rule. The landlord may be liable to the tenant if the injury although due to criminal activity occurred because of a condition of the premises. (*Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47, *appeal denied* (1976), 62 Ill. 2d 592, and compare *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536.) In addition the landlord may be liable if it attempts to safeguard the premises but does so negligently (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596), or if by his acts he creates a hazard which did not previously exist. *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.

In *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47, *appeal denied* (1976), 62 Ill. 2d 592, the plaintiffs sued to recover for losses due to burglaries which took place because of the Housing Authority's failure to secure two vacant apartments adjacent to the plaintiffs' apartment on the east and west sides. The plaintiffs were burglarized three times; the first and third times, burglars entered their apartment by breaking a hole through the wall separating plaintiffs' apartment from the vacant apartment to the west; the second time the burglars entered the apartment by breaking a hole through the wall separating plaintiffs' apartment from the vacant apartment to the east. The appellate court held that the Housing Authority had no duty to guard against the original burglary. However, after the Housing Authority had notice of the original burglary and the means used in effecting the burglary, the fact that another burglary could happen in the same fashion became eminently foreseeable and the Housing Authority owed plaintiffs a duty to guard against the second and third burglaries.

Applying the same test the court in *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536, denied liability because the loss was inflicted by persons unknown and had no causal or other connection with or relation to the property itself saying at 36 Ill. App. 3d 967, 971, 344 N.E.2d 536, 540:

> "The loss here had no physical or causal connection to the premises themselves. The condition of the premises did not in any manner contribute to the loss inflicted upon plaintiff. Requiring an owner to repair and maintain the property imposes a reasonable and essential social duty. There is no requirement reasonable or otherwise which any court could impose upon property owners which could conceivably prevent occurrences such as described in plaintiff's complaint. This type of crime springs from complex social

and other causes far beyond rectification by any court. To impose liability in the case before us would unjustly place upon defendant as a property owner a legal duty which is impossible of performance."

In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, the Illinois Supreme Court held that the Housing Authority, having chosen to hire an independent guard service, owed a duty to exercise reasonable care in engaging the guard service. In *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, the Housing Authority undertook to provide part-time guard service from 9 a.m. to 1 a.m. Having done so it owed a duty to perform the service with due care or such competence and skill as one possesses and it was obligated to use reasonable care not to create increased dangers to persons lawfully on its property. Accordingly, the Illinois Supreme Court held that a complaint alleging that the providing of part-time guard service substantially increased the incidence of crime after 1 a.m. when the guards were removed, that the Housing Authority was aware of the upsurge in criminal activity and negligently took no steps to provide protection from it and that as a consequence of this greater incidence of crime in the project the danger to tenants and guests was increased stated a cause of action.

The sole question presented to this court is whether the complaint here states a cause of action. While we agree that it could be better and more clearly phrased, we believe that it does state a cause of action based on all three of the exceptions we have described. Pleadings are to be liberally construed with the view that controversies shall be determined on their merits to do substantial justice rather than on technicalities and in deciding whether a complaint states a cause of action all facts pleaded as well as all reasonable inferences that can be drawn from these facts must be accepted as true. *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47, *appeal denied* (1976), 62 Ill. 2d 592.

From the pleadings, it can be concluded that, as in *Stribling*, crimes were being committed on the vacant property and that the vacant nature of the property contributed to the performance of the act; that, again as in *Stribling*, the Housing Authority knew or should have known of the crimes and accordingly "the fact that another [crime] could happen in the same fashion became eminently foreseeable" (34 Ill. App. 3d 551, 556, 340 N.E.2d 47, 50); that the Housing Authority for this reason had a duty to secure the vacant floors against other criminals but negligently failed to do so. Indeed this is a stronger case than *Stribling* since it appears that here the dangerous condition was created by the Housing Authority. The Housing Authority having chosen to close off the floors had a duty to do so in a manner that would not increase the danger to the residents of the

building. (*Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.) (We are aware that the plaintiff did not expressly allege that the closing of the floor increased the hazard to the tenants. Nevertheless the plaintiff did allege that rapes of minors were occurring in this area. It is a matter of common knowledge that rapists generally prefer to perform their crimes in isolated areas where third persons cannot hear a screaming victim and come to her aid.)

In addition, it appears from the pleading that the Housing Authority undertook to close off and secure the vacant floors to prevent criminals from entering the floors and to keep the floors safe for the tenants. Assuming this to be true, the Housing Authority, having voluntarily undertaken to secure the floors, had a duty not to do so negligently. *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472.

We do not believe, however, that plaintiff's allegation that the Housing Authority failed to provide security guards in the particular building although it had done so in other Cabrini Green buildings stated a cause of action in the absence of allegations that the providing of the guard service as to the other buildings increased the incidence of crime as to the building in question, that the Housing Authority was aware of this upsurge in criminal activity and negligently took no steps to provide protection against it and that as a consequence of this greater incidence of crime the danger to tenants was increased. We note, however, that the complaint was filed before even the appellate court's opinion in *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580, was handed down, and in the interests of justice the plaintiff should be given the opportunity to amend that allegation to state a cause of action in the light of *Cross*, if the facts so warrant.

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

LINN, P. J., and JOHNSON, J., concur.