DONALD C. KRAUTSTRUNK, Plaintiff-Appellant, *v.* THE CHICAGO HOUSING AUTHORITY, Defendant and Third-Party Plaintiff-Appellee.— (OTIS ELEVATOR COMPANY, Third-Party Defendant.)

First District (2nd Division)    No. 80-94

Opinion filed March 24, 1981.—Rehearing denied May 26, 1981.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Linda Ann Prasil, of counsel), for appellant.

Orner, Wasserman & Moore, of Chicago (Norton Wasserman and H. Elisabeth Huber, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Donald Krautstrunk brought an action against defendant Chicago Housing Authority (CHA), alleging that the CHA negligently failed to protect him from a criminal attack while he was on CHA property. The trial court dismissed the complaint, and plaintiff appeals.

Plaintiff was an elevator repairman employed by the Otis Elevator Company. Some CHA apartment buildings have Otis elevators, and on March 29, 1977, plaintiff was dispatched to repair an elevator in the Cabrini-Green housing project. Plaintiff was working on the 15th floor of an apartment building in Cabrini-Green. Plaintiff states that this floor was vacant, and that defendant had closed off the floor to render it inaccessible to the public and to prevent loitering and criminal activity. While plaintiff was servicing an elevator on the 15th floor, he was attacked by an individual, who shot him in the head. Plaintiff sustained severe and permanent injuries.

Plaintiff's fourth amended complaint relates, in some detail, the history of protective services at Cabrini-Green. In 1957, defendant executed an agreement with the Chicago Police Department, which agreement recited that Cabrini-Green residents would receive the same level of police protection provided other Chicago residents. The complaint further states that the CHA, aware of increasing security problems at Cabrini-Green, later supplemented the municipal police protection with a private security guard force. In 1974, defendant and the Chicago Police Department executed a new agreement, whereby police would increase patrols at Cabrini-Green, and defendant would pay the city the amount defendant had previously been spending on private security service.

Plaintiff argues that, by virtue of the 1974 agreement, Chicago police protection in Cabrini-Green was not essentially different from that formerly provided by private security guards. Plaintiff contends that the CHA bargained and paid for a level of service greater than that afforded other Chicago residents, and that this "optional" protection was a volun-

tary undertaking on defendant's part. Plaintiff cites the familiar principle that liability can arise from the negligent performance of a voluntary undertaking (see *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769), and argues that the CHA, having assumed the duty of providing security, was negligent in the discharge of that duty. Defendant responds that there was no such "undertaking," and that the 1974 agreement merely reflected a promise by defendant to begin paying for enhanced police protection that the city of Chicago had been providing since 1971. For purpose of argument, we will accept plaintiff's interpretation of the various documents appended to his complaint, and will assume that the agreement with the Chicago Police Department amounted to a voluntary undertaking to secure additional protective services.

Provisionally accepting plaintiff's position that defendant acquired a duty of care, it remains to define the scope of that duty. Recent cases involving the instant defendant have examined this issue. In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, our supreme court observed that the defendant's liability on an assumed duty theory is limited by the extent of his undertaking. In *Pippin*, defendant voluntarily engaged a private security guard service, and the court held that defendant assumed only the duty of using reasonable care in hiring the security firm. (78 Ill. 2d 204, 210.) In *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, the defendant (again, the CHA) engaged a security guard service to provide protection for a 16-hour period each day. The plaintiff in *Cross* alleged that this partial protection had the effect of increasing the danger after 1 a.m., when the guards were removed, and our supreme court held that the complaint stated a cause of action, insofar as it alleged that defendant breached his obligation of reasonable care when he provided guard service that actually increased the risk to the plaintiff. 82 Ill. 2d 313, 317-18.

■■■ The allegations of plaintiff's complaint do not meet the requirements set out in *Pippin* and *Cross*. Plaintiff alleges an undertaking by defendant, but he sets out no facts that would lead one to conclude that any action of the CHA or the police actually increased the risk of criminal attack over the danger level that would have obtained without defendant's voluntary security measures. The general rule is that there is no duty to anticipate the criminal actions of a third party. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 97, 306 N.E.2d 39.) None of plaintiff's allegations with respect to defendant's undertaking to provide security provide a basis for finding a duty to provide impenetrable security. The recent case of *Johnson v. Chicago Housing Authority* (1980), 92 Ill. App. 3d 301, treated the defendant's undertaking to screen the landings of CHA buildings. The plaintiff in *Johnson* argued that defendant had thereby assumed the duty of screening the buildings' windows,

because of the foreseeability of objects being thrown from the windows. The court in *Johnson* held that the imposition of a legal duty is not dependent solely on the foreseeability of an injury, but must take into account the likelihood of injury and the burden of guarding against it. (92 Ill. App. 3d 301, 302-03.) This court concluded in *Johnson* that the CHA is not an insurer for injuries resulting from objects thrown from windows. (92 Ill. App. 3d 301, 303.) Similarly, defendant's undertaking in the instant case to provide some measure of police protection does not make it an insurer for the safety of persons entering CHA property. (See *Stelloh v. Cottage 83* (1964), 52 Ill. App. 2d 168, 171, 201 N.E.2d 672.) While liability may be based on the negligent performance of a voluntary undertaking, the allegations of "duty" and "breach" must mesh: the complaint must show that the claimed negligence falls within the scope of the alleged undertaking. *Stelloh,* at 171.

■■ Plaintiff cites the case of *Phillips v. Chicago Housing Authority* (1980), 91 Ill. App. 3d 544, 414 N.E.2d 1133, recently decided by another division of this court. In *Phillips*, the plaintiff alleged that the defendant had undertaken to seal an unoccupied floor of an apartment building at Cabrini-Green, but had been negligent in the performance of this task, and, as a result, plaintiff's decedent was raped and murdered on that unoccupied floor. The appellate court held that the CHA, "having voluntarily undertaken to secure the floors, had a duty not to do so negligently." (91 Ill. App. 3d 544, 549.) The result in *Phillips* cannot easily be reconciled with the holdings of *Pippin* and *Cross*. The complaint in *Phillips* did not allege that the CHA's ineffectual attempt to seal the vacant floors had increased the risk to plaintiff's decedent. Since defendant had no duty to secure the unoccupied areas, a failure to secure these areas cannot be accounted a breach of duty unless defendant's action itself contributed to plaintiff's injuries. (*Cf. Cross,* at 318 (complaint that alleged that voluntary provision of guards increased the danger during unguarded hours stated a cause of action).) The court in *Phillips* relied in part on the case of *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47. The court in *Stribling,* noting the "bizarre facts" of the case, found that the CHA had a duty to secure a vacant apartment once it had notice that the vacant apartment allowed burglars access (by breaking through a wall) to plaintiff's adjoining apartment. (34 Ill. App. 3d 551, 556.) However, the *Stribling* result has been distinguished (see, *e.g., Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 970, 344 N.E.2d 536) and found not persuasive (see, *e.g., Pippin v. Chicago Housing Authority* (1978), 58 Ill. App. 3d 1029, 1035, 374 N.E.2d 1055, *aff'd* (1979), 78 Ill. 2d 204, 399 N.E.2d 596) in several opinions of this court. We conclude that, although the *Phillips* case presents issues similar

to those in the case at bar, the court's result is not supported by the weight of authority, and we decline to follow it.

Plaintiff's second contention on appeal is that, as a business invitee, he was entitled to a higher degree of protection from criminal attack. Plaintiff acknowledges that, without the finding of an assumed duty to provide protection, the defendant does not have a common law duty to control the criminal conduct of third parties unless there is a "special relationship" between plaintiff and defendant. (See *Martin v. Usher* (1977), 55 Ill. App. 3d 409, 410, 371 N.E.2d 69.) The relationship between the CHA and its tenants is not a "special relationship" that imposes such a duty. (See *Martin*, at 410.) Plaintiff argues that defendant does have such a special relationship with its business invitees. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538, lends support to plaintiff's contention. In *Fancil*, our supreme court considered the duty of a possessor of land to protect patrolling police officers. The court concluded that the possessor of land owes the same duty to policemen and firemen that he owes to invitees, and the court cited with approval section 343 of the Restatement (Second) of Torts (1965), which section deals with the general liability of a possessor of land for physical harm to invitees caused by a condition of the land. (60 Ill. 2d 552, 556-57.) Section 343 sets out the elements of such liability:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343 (1965).

Before ascertaining whether or not plaintiff adequately pleaded a dangerous condition of the premises and defendant's knowledge of that condition, we must determine what "conditions" might establish a duty of care for defendant CHA. Plaintiff has alleged that violent crime was rampant in Cabrini-Green, and that defendant was aware of this dangerous situation. Nevertheless, defendant should not be charged with the responsibility of remedying this "condition." As noted above, the CHA cannot insure the safety of all who enter its premises. (See generally *Stelloh*, at 171.) If the CHA is to be charged with the duty of alleviating dangerous "conditions" that facilitate criminal attacks, the "conditions" must be susceptible of alleviation. (See *Johnson*, 92 Ill. App. 3d 301, 302-03 (consequences of placing a remedial burden on defendant must be taken

into account).) Plaintiff's complaint, however, points not only to the high crime rate prevailing in the Cabrini-Green project, but also to the known presence of loiterers and criminals on the unoccupied floor where plaintiff was working. While the goal of a crime-free environment might be unattainable, the task of sealing a vacant floor should be within the capacity of a property owner.

■■■ The more tenable position, then, is that the possessor of land has a duty to protect invitees from criminal attacks, but only when such attacks are reasonably foreseeable, and the burden of preventing such attacks can reasonably be placed on the defendant. (See *Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 905, 407 N.E.2d 671.) Examining plaintiff's complaint in light of the scope of duty defendant owes to invitees, we find that the complaint states a cause of action. Plaintiff has alleged facts sufficient to conclude that he was an invitee on defendant's property. (See *Crum v. Gulf Oil Corp.* (1979), 70 Ill. App. 3d 897, 900, 388 N.E.2d 1008 (servants of independent contractors working on the land are invitees).) Plaintiff has alleged that defendant knew or should have known of the danger at the 15th floor worksite, and that defendant knew of the presence of plaintiff's assailant on the premises. Plaintiff has not expressly stated that he was unaware of the danger, but he has alleged that he relied on defendant for security, and that he was not contributorily negligent. From this it can be inferred that plaintiff was not aware of the danger on the 15th floor, or the presence of his assailant. A complaint is not deficient if necessary facts appear by reasonable implication. (*Central States, Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 713, 384 N.E.2d 123.) Finally, plaintiff has alleged that defendant did not exercise reasonable care to protect him. A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 578, 325 N.E.2d 799.) In the instant case, plaintiff has set out facts which, if true, could lead a jury to conclude that defendant breached a duty to plaintiff. Consequently, the dismissal of the complaint was error.

Defendant contends that plaintiff did not argue the "invitee" theory of recovery in the trial court, and he should therefore be barred from pressing that theory in this court. The general rule that defendant cites is indisputable. An appellant may not raise in the reviewing court an issue not presented to or considered by the trial court. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) Plaintiff herein is the appellant, but we nevertheless find that this case is not governed by *Kravis*. We question whether plaintiff is in fact raising a "new theory" on

appeal when the issue in this court is whether that "new theory" was properly set out in plaintiff's complaint. Having found that the complaint states a cause of action based on defendant's duty to plaintiff as an invitee, it would be anomalous to hold that this is a "new" theory, regardless of whether or not plaintiff chose to argue the theory in the trial court. *Cf. People ex rel. Sterba v. Blaser* (1975), 33 Ill. App. 3d 1, 9, 337 N.E.2d 410 (whether no evidence was taken at trial and issues were decided as a matter of law, appellate court can decide an issue raised for the first time on appeal).

More fundamentally, section 42 of the Civil Practice Act and cases construing that section teach that no complaint is insufficient if it reasonably informs the defendant of the nature of the claim he is called on to answer. (See Ill. Rev. Stat. 1979, ch. 110, par. 42(2); see also *Cain*, at 578-79.) Since, as we have concluded above, the allegations of plaintiff's complaint satisfy the elements of an action in negligence, defendant should not be heard to claim that he has not been informed of the nature of plaintiff's claim. Furthermore, plaintiff cannot be faulted for failing to clearly identify the "invitee" theory in his complaint, since the plaintiff must allege facts, rather than legal conclusions, in his pleadings. *Haas v. Mid-America Fire & Marine Insurance Co.* (1976), 35 Ill. App. 3d 993, 998, 343 N.E.2d 36.

As the complaint states a cause of action under the theory of defendant's duty to protect a business invitee from dangerous conditions on the land, and since we find that the rule of waiver of unargued points does not bar the amplification of causes of action properly pleaded, the judgment below is reversed and the cause is remanded for further proceedings in the trial court.

Reversed and remanded.

HARTMAN, P. J., and DOWNING, J., concur.