(No. 42947.—

Andrew Letsos, Appellee, *vs.* Chicago Transit Authority, Appellant.

*Opinion filed Dec. 4, 1970.—Rehearing denied Jan. 27, 1971.*

438

GEORGE J. SCHALLER, O. R. HAMLINK, JEROME F. DIXON, and MICHAEL A. GERRARD, all of Chicago, for appellant.

WILLIAM J. COLOHAN and JOHN L. ROACH, both of Chicago, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Andrew Letsos, while a fare-paying passenger on a bus operated by the defendant, was shot in the left leg and heel by an unidentified passenger. His complaint in the circuit court of Cook County for personal injuries charged the defendant was negligent in failing to take timely action to protect the plaintiff by warning, restraining or rejecting passengers whose disorderly or dangerous acts were known or should have been known or anticipated by the defendant. The defendant's motion for a directed verdict was denied and the jury returned a verdict for $25,000 in favor of the plaintiff. After denying the defendant's mo-

tion for judgment notwithstanding the verdict, the circuit court entered judgment. The Appellate Court, First Judicial District, affirmed. (*Letsos* v. *Chicago Transit Authority,* 118 Ill. App. 2d 26.) We have granted the defendant's petition for leave to appeal.

The sole question raised here, and earlier in the appellate court, is whether the trial court erred in denying the defendant's motion for judgment notwithstanding the verdict. We have held that such motions should be allowed only in cases in which the totality of the evidence, "viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick* v. *Peoria and Eastern Railroad Co.,* 37 Ill.2d 494, 510.

The plaintiff testified that on the evening of April 2, 1962, he and his cousin, Peter Tselios, boarded a westbound Madison Street bus of the defendant at Clark (100 West) and Madison in Chicago. Both secured seats near the front of the bus. Tselios occupied a place on a side seat to the right of the driver and the plaintiff sat on the aisle side of the first two-passenger seat facing the front of the bus. A short time after boarding, the plaintiff said he heard some unusual noises coming from the rear of the bus. The noises were not too loud at first, but they continued until the shooting, he testified. The plaintiff described the activity as "hollering and argument about something."

After making a number of uneventful stops, the bus approached Oakley Boulevard (2300 West). There a passenger, who came from the rear of the bus, tripped over or stepped on Tselios's feet as the passenger walked toward the front door of the bus. Tselios said to the passenger: "You stepped on my feet." The passenger said nothing, according to the plaintiff's testimony, and promptly alighted from the bus. When the door had been closed, the plaintiff testified, a man seated behind the driver on the side seat across from Tselios told Tselios to remove his feet from the

aisle. Tselios's response was that the passenger could mind his own business. The man rose and began to move toward Tselios with his arms outstretched. Almost simultaneously, the plaintiff said, the noise in the rear of the bus grew very loud. As the plaintiff turned in his seat to look back to the rear, shots rang out, wounding the plaintiff. He did not see his assailant but he surmised that the shots came from the rear of the vehicle. He said he asked the driver to stop the bus but that it did not stop until it reached Western Avenue (2400 West), one block west of Oakley. The plaintiff's testimony was that the bus was one-half block from Western Avenue when the passenger stood and menaced Tselios.

The testimony given by the bus driver differed sharply from that of the plaintiff. The driver testified that he heard no noise, commotion or disturbance on the bus prior to the Oakley Boulevard stop. At this stop, he said, a passenger stumbled on his way to the front door. The passenger then turned, he said, and told Tselios to remove his feet from the aisle. When it appeared to the driver that the passenger was "going to get involved physically" with Tselios, the driver directed the passenger to leave the bus. The man did alight, but then, the driver testified, he attempted to re-board the bus. At that, the driver slammed the door and drove off toward Western Avenue. When the bus was midway between Oakley Boulevard and Western Avenue, an argument began, the driver continued, between the passenger sitting to his rear and Tselios. The passenger told Tselios to remove his feet from the aisle and Tselios responded by telling the passenger to "mind his own damned business." Apparently the driver's testimony was that the plaintiff, too, told the man to mind his business. The pair were still arguing when the bus arrived at the Western Avenue stop seconds later. As the bus approached the stop the driver observed through his mirror a short man run from the back of the vehicle and strike either Tselios or the plaintiff. The plaintiff, Tselios, the short passenger, and the passenger who had been

arguing with Tselios then began to fight. With this the driver said he began to rise from his seat to separate the men, but before he could intervene the shots were fired. He did not see the assailant, he testified, but the shots came from the area where the men were fighting. The fight and the discharge of the weapon occurred, the driver stated, within a matter of seconds and after the bus had arrived at Western Avenue.

Two women who had been passengers on the bus also appeared as witnesses. They had boarded the bus one block east of Oakley and did not observe nor hear any disturbance on the bus before the Western Avenue stop. Their testimony was hardly impressive, however, since neither recalled the incident which occurred at Oakley Boulevard or the argument between Tselios and the passenger which developed as the bus traveled between Oakley and Western Avenue. Neither did they recall whether the bus had stopped at Oakley Boulevard. No testimony from Tselios was available since he was not in the United States at the time of trial.

The parties do not quarrel as to the legal responsibility imposed on the defendant in this case. As a common carrier, the defendant was bound to exercise a high degree of care toward its passengers and this included the responsibility to prevent injuries which could have been reasonably foreseen and avoided by the carrier. (*Neering* v. *Illinois Central Railroad Co.*, 383 Ill. 366; *Sue* v. *Chicago Transit Authority* (7th cir., 1960), 279 F.2d 416.) A carrier will be held liable for an assault by one passenger on another or for misconduct by one passenger which causes injury to another where the carrier has reason to anticipate the incident, and fails to exercise the degree of care and vigilance practicable under the circumstances to prevent the injury. *Chicago and Alton Railroad Co.* v. *Pillsbury,* 123 Ill. 9; *Neering* v. *Illinois Central Railroad Co.,* 383 Ill. 366; see also *Citizens Coach Co.* v. *Wright,* 228 Ark. 1143, 313 S.W.2d 94, *Murray* v. *Cedar Rapids City Lines, Inc.,* 242 Iowa 794, 48 N.W.2d 256.

The parties agree that whether the judgment notwithstanding the verdict should have been entered depends on whether the conditions on the bus should have placed the driver on notice that an injury to a passenger was likely to occur. The evidence most favorable to the plaintiff shows noise, described vaguely as "hollering and argument," coming from the rear of the bus. This is said to have continued throughout the trip, but the plaintiff testified that the noise, though he had referred to it as "hollering," was not very intense or loud until the bus pulled away from Oakley Boulevard. There is nothing to show that any threats, vulgarities or other provocative or aggressive language was used. The plaintiff described the bus as "crowded" and a certain level of noise would not have been unusual. Too, and importantly, no connection appears between this noise in the rear and the later events in the front of the vehicle. Although the passenger who stumbled and the passenger who shot the plaintiff were said to have come from the rear of the vehicle, there is nothing in the record to suggest the participation of either in the noise created in the rear.

Considering the incidents in the front of the bus, we believe that the driver, after discharging and driving away from the passenger who had tripped, could reasonably have concluded that the danger of an incident of possible violence had passed. From this point, whether we accept the plaintiff's or the driver's version of the ensuing events, it was only a matter of seconds before the plaintiff was wounded.. Under either version the bus traveled but one-half block between the time the argument between Tselios and the second passenger began and the shooting. The defendant not unreasonably argues that such a distance could be covered under normal speed in less than 30 seconds. To say that the bus driver should have taken the measures suggested by the appellate court within this time consistently with the safe operation of his vehicle would have imposed, we consider, an impracticable, if not impossible, burden.

Viewing all the evidence in a light most favorable to the plaintiff, we judge that the incident causing the plaintiff's injury occurred so quickly and unexpectedly that the driver acting with the highest degree of care under the circumstances could not have averted it. We judge that the trial court should have entered a judgment notwithstanding the verdict.

For the reasons given, the judgment of the Appellate Court, First Judicial District, is reversed.

*Judgment reversed.*