RAYMOND M. WATSON, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

(No. 53438;

First District—May 28, 1971.

*Rehearing denied June 22, 1971.*

John C. Ambrose, of Chicago, for appellant.

George J. Schaller, O. R. Hamlink, Jerome F. Dixon, and Harry I. Parsons, all of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

On May 22, 1963, plaintiff filed suit for gun shot and other injuries sustained at the hand of a fellow passenger on one of defendant's buses. At the close of plaintiff's evidence, the court granted defendant's motion for a directed verdict and entered the judgment in its favor from which this appeal has been taken.

Plaintiff testified that at 6:15 A.M. on December 25, 1962, he and Maureen Davis boarded a westbound bus on 69th Street at South Park Avenue. After paying their fare, he and Miss Davis seated themselves on the driver's side of the bus approximately ten feet behind the driver.

There were six to eight people, including the driver, on the bus. As he and Miss Davis proceeded to their seats, he noticed the driver talking to a man on the long seat nearby. When the bus got to State Street, that man, who was a passenger, started down the stairs to get off the bus, but then turned around, exchanged a few words with the driver, and walked back to where plaintiff and Miss Davis were sitting.

In a loud voice he asked plaintiff if he had 25 cents in change, and plaintiff answered that he did not. He then asked plaintiff if he had change for a dollar, and plaintiff again said he did not, and told him to ask the driver for change. The man then reached into his right pocket and pulled out a pistol. Plaintiff grabbed him by the wrist, got up from his seat, and began wrestling with his assailant for the gun. The woman sitting directly in front of them, Miss Christy, began screaming loudly, "Stop the bus, this guy is going to kill this kid." (Plaintiff testified that Miss Christy had a heart attack and died as a result of this incident.) Miss Davis got up to help him and was screaming, "Stop the bus," and "Please stop and get help."

The bus proceeded from State Street to the place where it stopped between Stewart and Normal without making any of the regular intervening stops. The court took judicial notice of the fact that the distance between State and Normal is four blocks, or one-half mile. Stewart is within that distance, one block east of Normal. Plaintiff remained seated during the argument which began after they left State Street. The bus was between State and Wentworth (two blocks west of State) when the man pulled his gun. At that point, plaintiff got up out of his seat and wrestled the man to the back of the bus. Plaintiff fell back against the rear door of the bus with the man on top of him, and, trying to keep the pistol away, plaintiff had both his hands around the man's wrist. Miss Davis continued screaming and was pulling on the man from the back. The bus driver did nothing until, somewhere between Stewart and Normal, while the bus was in motion, he pushed the back door lever, the door opened, the man shot plaintiff in the stomach, and they fell out of the bus. Miss Davis either got off the bus or fell off on top of them. They lay stunned for a couple of seconds as the bus proceeded on and stopped a short distance away. Plaintiff rose to one knee, the man swore, took the pistol, and put it in plaintiff's face. Miss Davis got up and started to grab the man who pushed her aside and fired two or three shots at her at close range, but missed. The man ran west from the bus down the street.

Miss Davis stopped a motorist who was going west on 69th Street, and the police were summoned. Plaintiff could see them sitting in a squad car which was standing a half-block east at a stop sign on Stewart

at 69th Street. The passengers got off the bus and the bus driver locked the doors and sat on the bus. Approximately fifteen minutes later, plaintiff was taken to a hospital.

Maureen Davis' testimony was substantially the same as plaintiff's, except she testified that plaintiff had been shot when he was in the street rather than on the bus, and added that at one point during the struggle on the bus plaintiff had knocked the gun from the assailant's hand.

The sole issue before us is whether the trial court erred in granting defendant's motion for a directed verdict at the close of plaintiff's evidence. The test for determining the correctness of the trial court's ruling is whether "all of the evident, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510.

**❶ 1** Plaintiff contends that proof that he was assaulted and injured while a passenger on a common carrier is *prima facie* presumptive of defendant's negligence, and constitutes sufficient evidence to raise a question of fact for determination by the jury. As authority for this proposition, plaintiff directs our attention to the cases of *N.Y., C. & St. L. R.R. Co. v. Blumenthal*, 160 Ill. 40, 48-49, and *Galena and Chicago Union Railroad Co. v. Yarwood*, 15 Ill. 468, 471. In both of these cases, the court discusses the effect of proof of an "accident" to a passenger. In the *Yarwood* case, at page 471, the court stated:

> "Proof that [plaintiff] was a passenger, the *accident*, and the injury, made a *prima facie* case of negligence." (Emphasis supplied.)

Similarly, the court in the *Blumenthal* case stated at page 48:

> "* * * where the plaintiff is a passenger, a *prima facie* case of negligence is made out by showing the happening of the *accident*. If the injury to a passenger is *caused by apparatus wholly under the control of the carrier and furnished and applied by it*, a presumption of negligence on its part is raised." (Emphasis supplied.)

The point in both of these cases is that where a passenger is shown to have suffered accidental injury on a common carrier, and where the apparatus causing injury is solely under the defendant's control, the burden of proof shifts to the defendant. But where the injury is caused by an independent force not exclusively within defendant's control, such as an assault by a third person, a *prima facie* case is not established without an affirmative evidentiary showing of defendant's negligence as a proximate cause of the injury. See *Kerby v. Chicago Motor Coach Co.*, 28 Ill.App.2d 259, 262-63, and *Chicago City Ry. Co. v. Rood*, 163 Ill. 477, 481-82.

■■ It is true, nevertheless, that an assault by a third person upon a passenger is not such an intervening force as will necessarily relieve a carrier from liability. Because of the high degree of care which a carrier owes to its passenger, it will be considered negligent (a) if the assault is reasonably foreseeable, and (b) if it could prevent the injury and fails to do so. *C. & A. R.R. Co. v. Pillsbury*, 123 Ill. 9, 22-23; *Sue v. Chicago Transit Authority*, 279 F.2d 416, 418.

Plaintiff cites as controlling the case of *Blackwell v. Fernandez*, 324 Ill.App. 597, 603, which involved an assault on one passenger by another. The court there held that the question of whether the plaintiff had been afforded the "highest reasonable degree of care" was a question for the jury. In that case, however, the plaintiff had offered evidence upon which a jury could properly decide that he had not been afforded the required degree of care. The assailant was obviously intoxicated as he boarded the rear platform of a street car, where he cursed a woman passenger, cursed the conductor, and for a considerable period of time remained on the platform arguing with the conductor about the fare. He then proceeded down the aisle, shouting and annoying passengers, during all of which time no weapon was apparent, and the clear inference from the opinion is that the conductor or motorman could safely have taken steps to remove him from the car, and that such action would have been successful. That time having passed, the assailant got into a brief fight with another passenger, drew a knife, and stabbed him. We consider those facts readily distinguishable from the evidence in the instant case.

The proof in the case before us establishes no ground for alarm or indication of danger until the assailant drew his pistol. The bus had proceeded west from State while the conversation about change was going on, and had reached a point between State and Wentworth (two blocks west) when the gun was drawn. We think it reasonable to conclude that the bus travelled more than a block during this time or plaintiff would have located the place where the gun was drawn in reference to the street one block west of State, rather than to Wentworth which is two blocks west.

Assuming, therefore, that with the brandishing of the pistol, and the screams of the lady passengers, the bus driver was made aware of the danger, he was then required to act with the high degree of care owed to his passengers, bearing in mind, however, that a person confronted by a sudden dangerous emergency is not to be judged by the deliberation of hindsight but rather by the standard of conduct of a prudent person under similar circumstances. I.L.P. Automobiles and Motor Vehicles, § 108.

It was obvious that the driver could have foreseen that a man pointing a gun might shoot someone, but what, then, could he have reasonably been required to do? The only suggestion inherent in plaintiff's presentation of the evidence is that the driver could have stopped the bus sooner, but what could he have been expected to do then? Surely, it could not be considered necessary for an unarmed person to disarm a man who is wielding a deadly weapon, in order to avoid a charge of negligence. Nor is there any likelihood that an attempt to do so could have been successful, or might not have resulted in still more injuries than those which occurred.

Restatement, Second, Torts, § 4, gives the following definition of "duty":

> "The word 'duty' is used throughout the Restatement of this Subject to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause."

Comment:

> "a. The duty which is defined in this Section is a duty that the actor shall conduct himself or not conduct himself in a particular manner. *It therefore imposes no obligation which is not within the actor's ability to perform, since it relates only to the actor's conduct over which as such he has control.*" (Emphasis supplied.)

We are aware of no authority which imposes on a carrier's employee the duty to exercise that degree of care for the safety of his passengers which would require that he risk the sacrifice of his own very life for theirs.

■■ Short of a foolhardy attempt to gain possession of the gun, there is nothing indicated that the driver could have done with the bus stopped, except that he could have "done something." Was there anything he could have done which would have been more reasonable than what he did do, namely, to continue driving for two or three blocks and stop when the bus passed a standing police car? We think not.

In the very recent case of *Letsos v. Chicago Transit Authority,* 47 Ill.2d 437, 265 N.E.2d 650, the Supreme Court reaffirmed the basic principles to which we have alluded, stating:

> "As a common carrier, the defendant was bound to exercise a high degree of care toward its passengers and this included *the responsibility to prevent injuries which could have been reasonably foreseen and avoided by the carrier.* [Citations omitted.] A carrier

will be held liable for an assault by one passenger on another or for misconduct by one passenger which causes injury to another where the carrier has *reason to anticipate the incident, and fails to exercise the degree of care and vigilance practicable under the circumstances to prevent the injury."* (Emphasis supplied.)

In *Letsos,* it was determined that between the commencement of an argument between two passengers, and the shooting of a third passenger by a fourth passenger from another part of the bus with a gun which nobody had seen up to that point, was so short a time (30 seconds) that the injury could not have been averted by the driver acting with the highest degree of care. The Appellate Court was reversed in its holding that the driver "could have stopped and attempted to calm the bellicose passengers or ordered them to leave; he could have opened the doors and permitted the peaceful ones to step out until the danger abated or further transportation arrived." In finding that the time was too short for the driver to have done these things, we believe that the Supreme Court did not in any way indicate that such action would be required in the instant case where a somewhat longer time was involved. We reach this conclusion because of the difference between the possibility of controlling an argument among unarmed passengers and the impossibility or improbability that an unarmed man could successfully disarm a man with a gun without injury to himself or others.

We find, therefore, that, under the rule of *Pedrick, supra,* the order of the trial court directing a verdict in favor of the defendant was correct, and the judgment is affirmed.

Judgment affirmed.

STAMOS, P. J., and DRUCKER, J., concur.