DAVID COMASTRO, Plaintiff-Appellant, *v.* THE VILLAGE OF ROSE-MONT, Defendant-Appellee.

First District (4th Division)   No. 82—2771

Opinion filed March 15, 1984.

Stephen E. Alloy, of Susan E. Loggans and Associates, of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, David Comastro, filed an action in the circuit court of Cook County seeking damages from defendant, the village of Rosemont (Village), for injuries he allegedly sustained as a result of the Village's negligent failure to use due care in patrolling its premises and thereby prevent a criminal attack by an unknown third party. The Village responded by filing a motion for summary judgment, arguing that as it had no duty to protect Comastro from random criminal attack, no genuine issue of material fact existed, and the Village was entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) The Village's motion was granted, and Comastro now appeals.

The sole issue raised on appeal is whether the trial court erred in granting summary judgment to defendant, the village of Rosemont.

We reverse the entry of summary judgment by the trial court and remand the case for trial on the issues of breach of duty, proximate cause of injury, and damages.

FACTS

The record discloses that Comastro, his brother, and some friends were among the audience at a September 20, 1980, rock concert presented by the group AC/DC at the Rosemont Horizon, a large arena owned by and located in the village of Rosemont. When Comastro and his girlfriend arrived at the Horizon, he saw several Rosemont policemen directing traffic into the parking lot. At each entrance to the arena, police personnel wearing yellow jackets were conducting pat-downs of the incoming patrons and confiscating any bottles, cans, fireworks, drugs, or weapons found. During the concert, the traffic officers patrolled the parking lot to discourage vandalism, catch bootleg vendors of AC/DC items, and prevent damage to the private property

surrounding the Horizon.

After the concert was over, the police assumed the task of helping the 18,000 spectators leave the building in a safe, orderly manner. According to the depositions of Comastro and the resident manager of the Horizon, no fights or arguments had broken out during the concert, no one was observed drinking, and the only "rowdiness" was some dancing in the aisles.

Following the concert, the members of Comastro's party left the arena, stopped briefly on the walkway outside the door, and then parted to go to their cars. As Comastro looked back, he saw a large male hit his brother; he went back and asked what the trouble was, whereupon the unknown male attempted to punch him. Comastro hit back and broke his hand. At that moment another assailant began hitting Comastro on the back of the head, and an empty bottle came down on his shoulder. With that, the assailants fled. Comastro located his girl friend, but neither she nor any of his brother's friends had witnessed the incident. Although Comastro did not report the attack to any Horizon official or the local police, he did relate the incident to his attorney, who thereafter filed this suit.

OPINION

In order to prevail in a negligence action, a plaintiff must prove that the defendant breached a duty owed to plaintiff and thereby proximately caused plaintiff's injuries. (*Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 407 N.E.2d 671.) A trial court may enter summary judgment only when, after examining all the pleadings, depositions, and affidavits, it concludes that no genuine issue of material fact exists between the parties and summary judgment may be entered as a matter of law. (*Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d 1217; Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) Conversely, if a court is presented with disputed facts or conflicting inferences, entry of summary judgment is inappropriate. *Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 430 N.E.2d 536.

The existence of a duty, *i.e.*, the legal obligation imposed upon one person or entity for the benefit of another, is a question of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) On the other hand, questions concerning a breach of that duty and proximate cause of injury are questions for the trier of fact. *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284.

In its motion for summary judgment, the Village acknowledged

that although the general rule is that a person has no duty to protect someone from criminal attack by third persons (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39), its relationship to Comastro was, as Comastro alleged in his amended complaint, that of an owner of business premises to a business invitee, one of four "special relationships" recognized as exceptions to the general rule. (*Burks v. Madyun* (1982), 105 Ill. App. 3d 917, 435 N.E.2d 185; *Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 420 N.E.2d 429; Restatement (Second) of Torts sec. 314A (1965).) These four "special relationships," which do give rise to a duty to protect another from harm, are (1) carrier-passenger, (2) innkeeper-guest, (3) business inviter-invitee, and (4) voluntary custodian-protectee under certain limited circumstances. In each one of these relationships, the carrier, the innkeeper, the business inviter, and the voluntary custodian all owe their respective charges a duty to protect them from harm as long as they have the requisite "knowledge of previous incidents or special circumstances [that] would charge the owners [carriers, etc.] with knowledge of the dangers and the duty to anticipate it." *O'Brien v. Colonial Village, Inc.* (1970), 119 Ill. App. 2d 105, 108, 255 N.E.2d 205, 207.

The duty imposed on a private party, who may or may not be involved in a special relationship, is to exercise reasonable care under the circumstances to the extent of its undertaking. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.) A municipal corporation engaged in a nongovernmental function, such as the operation of a public stadium or arena (*Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 407 N.E.2d 671), a public transportation system (*McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 371 N.E.2d 625), or a public housing project (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038), will be held to the same standard of care as that imposed on a private party. In situations involving one of the "special relationships" discussed above, the "extent of the undertaking" is the special relationship itself; the common carrier, like the innkeeper, the business inviter, and the custodian, is "bound to exercise a high degree of care toward its passengers and this include[s] the responsibility to prevent injuries which could have been reasonably foreseen and avoided." *Letsos v. Chicago Transit Authority* (1970), 47 Ill. 2d 437, 441, 265 N.E.2d 650, 653.

Noting that business visitors subjected to personal attack are owed the same duty by the premises owner as are owed by the carrier to its passengers, *Haynes v. Chicago Transit Authority* (1978), 59 Ill.

App. 3d 997, 1002, 376 N.E.2d 680, 684, concluded,

"[O]nce a common carrier has knowledge of prior criminal acts or a condition which might result in an assault on its passengers, it is duty bound to take reasonable precautions for the protection and safety of its passengers."

What precautions are reasonable is a question for the trier of fact.

In its motion for summary judgment, the Village conceded its special relationship to plaintiff; the main issue, therefore, is whether or not the Village had sufficient knowledge so that the likelihood of danger to its patrons was reasonably foreseeable. The Village argued that it did not have this requisite knowledge of prior criminal acts or special circumstances that would charge a premises owner with knowledge of the danger and the resulting duty to take reasonable precautions to prevent harm to its invitees. In support of its position, the Village noted that the depositions and affidavits of Horizon management personnel, representatives of the producing organization, and Comastro himself all contained statements that no unruly behavior had taken place in the arena, no fights had broken out, and no drinking had been observed. Therefore, the Village concluded, it had insufficient warning of possible danger to its patrons to hold it liable for negligence. While we agree that those statements would support a contention of insufficient notice on the part of Franklin Fried Associates, another of the original defendants and the author of the motion for summary judgment in question, we do not agree that they suffice in the case of the Village, the defendant that simply adopted that motion without alteration to reflect facts within its knowledge.

The deposition of Donald Stephens, deputy chief of police of the Rosemont Police Force, clearly demonstrated that the Village, which retained authority over all exterior portions of the Horizon and its grounds as well as provided security inside the arena, had advance notice of potential trouble at the AC/DC rock concert. The police department had telephoned several other locations where the group had performed and had learned of the specific problems previously encountered by those other arenas. Further, AC/DC had performed at the Horizon only a year before, at which time, according to Stephens, "we learned pretty good. *** The band attracts a rowdy type of—a very rowdy, drunkers, drug users." We find, therefore, that the Village had sufficient advance warning of potential trouble at the concert in question to establish a duty owed to its business invitees to take reasonable steps and exercise the degree of care and vigilance practicable under the circumstances to prevent the injury. (*Letsos v. Chicago Transit Authority* (1970), 47 Ill. 2d 437, 265 N.E.2d 650.)

Whether the actions of the Village in deploying the police everywhere except the parking lot after the concert constituted a breach of that duty is a question to be determined by the trier of fact.

■ On appeal, the Village alternatively claimed that it was shielded from liability for negligently failing to protect its citizens from criminal attack by "the general rule of non-liability of municipalities for failure to exercise general police powers." However, the Village presented no arguments to establish the necessary fact that its activities at the Horizon were those of a municipality engaged in a governmental function and supplying only general police protection to preserve a community's well-being. Instead, Comastro's observation, corroborated by the deposition of the deputy chief of police, that the policemen conducting the patdowns and maintaining order inside the Horizon were wearing yellow jackets instead of their official uniforms indicates that the police were providing special protection to specific members of the community. The duty of the police acting in their official capacity to preserve a community's well-being is owed to the community at large, not to specific members of the community (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610); it is this general duty, not any special duty owed to a specific individual or group, that is subject of the general rule that a municipality is not liable for failure to supply general police protection. *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.

Even if the police had been acting in their official capacity, the recent case of *Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 420 N.E.2d 429, appears to indicate that a duty to protect against criminal attack will arise when the police are paid to provide "a level of service greater than that afforded other [village] residents." (95 Ill. App. 3d 529, 530, 420 N.E.2d 429, 431.) In *Krautstrunk*, the Chicago Housing Authority paid for extra police patrols of the Cabrini-Green housing project. That action, by which the residents of Cabrini-Green were afforded police protection greater than the customary police protection provided Chicago residents, was deemed a voluntary undertaking, and the police were held to a duty to perform it with reasonable care. Correspondingly, the actions of the police at the Horizon in providing the patrons with greater protection than that offered to the Village residents at large was a similar type of voluntary undertaking to which the same duty should apply.

Other instances of the voluntary assumption of a duty where none is imposed by law appear in the many landlord-tenant cases cited by Comastro. A landlord in Illinois is under no obligation to keep his premises safe from criminal activity. (*Pippin v. Chicago Housing Au-*

*thority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.) However, once he elects to do so, he owes a duty to his tenants to perform that service with such competence and skill as he possesses, for liability then rests on a breach of the duty to perform the gratuitous service with due care. (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038, citing *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) It appears clear to us that when the situation in the instant case is analyzed under either the business inviter-invitee theory or the police protection theory, the result is the same: the village of Rosemont owed Comastro a duty to use reasonable care in providing for his safety while he was on the premises of the Horizon.

■ For all the reasons discussed above, we find as a matter of law that the Village owed Comastro a duty as a patron of the Horizon to exercise reasonable care to protect him from criminal attack. Whether the Village breached that duty by deploying the security personnel as it did and thereby proximately caused Comastro's injuries are material issues of fact which must be determined by the trier of fact. The entry of summary judgment in favor of the Village was error, and we accordingly reverse the judgment of the trial court and remand this case for trial.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.