Suzanne **FIGUEROA** and Luis **Figueroa, Plaintiffs,**

v.

**EVANGELICAL COVENANT CHURCH, d/b/a North Park College, Defendant.**

**No. 85 C 1916.**

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1988.

Lee H. Russell, Northlake, Ill., for plaintiffs.

John J. Treacy, Braun, Lynch, Smith & Strobel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Suzanne Figueroa ("Figueroa") and her husband have filed this diversity suit against Evangelical Covenant Church, doing business as North Park College ("North Park"), arising out of injuries Figueroa sustained when she was allegedly abducted by two unknown assailants from a parking lot owned by the defendant. This matter is presently before the court on defendant North Park's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated in this memorandum opinion, North Park's motion for summary judgment is granted.

### I.

On the morning of May 12, 1983, Figueroa brought her child to the Northeastern Illinois University Child Care Center ("Center"), located at 5101 North Kimball Ave-

nue, Chicago, Illinois. After dropping off her child at the Center, Figueroa was allegedly abducted at gunpoint by two individuals from a parking lot owned by North Park which was located north of and adjacent to the Center. The assailants left the premises in her automobile and then drove to a different location, where she was subsequently sexually assaulted for several hours. The assailants attacked her with a knife, slashing through her right hand and across her throat.

North Park permitted patrons of the Center to use the subject parking lot when they dropped off or picked up their children. (Edgar Swanson ("Swanson") Dep. 48.) However, there was no written agreement or lease between North Park and either Northeastern Illinois University, which leased the day care center, or the Yugoslavian Seventh Day Adventist Church, which owned the building, regarding the use of the North Park lot. (*Id.* 52.)

North Park employs in its security force off-duty Chicago police officers. (Harry Tannehill Dep. 19; Edgar Swanson Dep. 10.) The officers are required to patrol North Park campus, including the subject parking lot. (Harry Tannehill ("Tannehill") Dep. 24, 29.) Director of Security, Harry Tannehill ("Tannehill"), testified in his deposition that the North Park campus consists of approximately 25 acres. (*Id.* 24.) He also stated that some 800 to 900 students attend North Park College and that about 300 to 500 students live on campus. (*Id.* 26–27.) He further testified that there is generally never more than one officer on duty during the week other than himself unless there is some special event or need. (*Id.* 19–20.) Edgar Swanson, Vice President of Business and Finance of North Park, testified that additional security was given to particular groups known in advance to be coming on campus, but such security was usually done by way of contract. (Swanson Dep. 25–32.)

The Figueroas have filed a six-count third amended complaint against North Park, claiming negligence in allowing Figueroa to be abducted from a parking lot owned by North Park.[1] Counts I and II allege in pertinent part as follows:

Defendant was negligent in that defendant failed to keep its property reasonably safe for the use of persons, including the plaintiff, lawfully on the property.

Defendant was negligent in that the defendant failed to see that any tenants or lessees using its property kept said property reasonably safe for the use by persons, including the plaintiff, lawfully on the property.

Defendant failed to provide adequate security personnel or precautions to keep the premises safe for persons lawfully on the premises when the defendant knew, or should have known, that the premises and the surrounding vicinity had been the scene of previous criminal activities.

Defendant failed to discover the unlawful presence of the plaintiff's attackers when defendant knew, or should have known, that the attackers had been present on the premises for approximately one hour before they abducted the plaintiff.

Counts III, IV, V, and VI essentially allege that North Park voluntarily undertook to provide security for persons using the parking lot, including Suzanne Figueroa, and failed to exercise reasonable care in doing so.

North Park has moved for summary judgment, claiming that it does not owe a duty to protect the plaintiff Suzanne Figueroa from the criminal acts of third persons as a matter of law. North Park further maintains that plaintiffs' claims do not fall within any of the exceptions to the general rule that one has no duty to protect another from a criminal attack.

**1.** The court notes that Counts II, IV, and VI are claims brought on behalf of Luis Figueroa for loss of consortium as a result of his wife's injuries. With the exception of the paragraphs alleging loss of corsortium, these counts are identical to Counts I, III, and V, respectively, which relate to Suzanne Figueroa's injuries.

## II. *Analysis*

Under Illinois law, which governs in this diversity action, the general rule is a person has no duty to protect another against criminal attacks by third persons. *See Boyd v. Racine Currency Exchange, Inc.*, 56 Ill.2d 95, 97, 306 N.E.2d 39, 40 (1973); *Comastro v. Village of Rosemont*, 122 Ill. App.3d 405, 408, 78 Ill.Dec. 32, 35, 461 N.E.2d 616, 619 (1984). However, a recognized exception to the general rule is where a "special relationship" exists between the parties. *Burks v. Madyun*, 105 Ill.App.3d 917, 61 Ill.Dec. 696, 435 N.E.2d 185 (1982). In deciding whether a special relationship exists, Illinois courts have relied upon the Restatement (Second) of Torts, Section 314A. *Id.* 105 Ill.Dec. at 920, 61 Ill.Dec. 696, 435 N.E.2d 185. The Restatement (Second) of Torts Section 314A lists four special relationships that give rise to a duty to protect another from harm. They are: (1) carrier-passenger, (2) innkeeper-guest, (3) business inviter-invitee, and (4) one who voluntarily takes custody of another under circumstances as to deprive the other of his normal opportunities for protection. *Id.* In order to fall within the ambit of the "special relationship" exception, the Figueroas contend that Suzanne was a business invitee on North Park's premises at the time the abduction occurred.

A person is an invitee if: (1) he enters the premises of another by express or implied invitation; (2) his entry is connected with the owner's business or with an activity that the owner conducts or permits to be conducted on his land; and (3) there is a mutuality of benefits or a benefit to the owner. *Cerniglia v. Farris*, 60 Ill. App.3d 568, 576, 113 Ill.Dec. 10, 14, 514 N.E.2d 792, 796 (1987); *Burks v. Madyun*, 105 Ill.App.3d 917, 920, 61 Ill.Dec. 696, 670, 435 N.E.2d 185, 189 (1982). A property owner owes a duty to protect his business invitee against criminal attacks of third persons on his premises only when the harm is reasonably foreseeable. *Gill v. Chicago Park District*, 85 Ill.App.3d 903, 905, 41 Ill.Dec. 173, 175, 407 N.E.2d 671, 673 (1980); *O'Brien v. Colonial Village, Inc.*, 119 Ill.App.2d 105, 108, 255 N.E.2d 205, 207 (1970).

North Park argues that Figueroa was not a business invitee of North Park, but rather a licensee. The court agrees. A licensee is one who goes on the premises of another with the owner's express or implied consent, to satisfy his or her own purpose rather than for the mutual benefit of himself and the owner or a business purpose. *Cerniglia, supra*, 60 Ill.App.3d at 576, 113 Ill.Dec. at 14, 514 N.E.2d at 796; *Grimwood v. Tabor Grain Co.*, 130 Ill. App.3d 708, 710, 86 Ill.Dec. 6, 8, 474 N.E.2d 920, 922 (1985).

In this case, North Park permitted those associated with the day care center to use the parking lot. (Swanson Dep. 48.) Mere tolerance or acquiescence does not constitute an invitation. *Grimwood, supra*, 130 Ill.App.3d at 711, 86 Ill.Dec. at 8, 474 N.E.2d at 922. Plaintiffs direct this court's attention to a letter dated March 18, 1982 from Edgar Swanson to the Yugoslavian Seventh Day Adventist Church, owner of the day care center building, which plaintiffs believe provides specific permission by North Park for the continued use by parents and guardians of the subject parking lot. (*See* Plaintiff's Statement p. 2; *see also* Defendant's Motion for Summary Judgment, Ex. 7.) However, the letter states, in part, that for the past two years, North Park has been pleased to share its parking facilities in the parking lot with the Church's tenants. (Defendant's Motion for Summary Judgment, Ex. 7.) We find that the letter merely expresses North Park's policy to permit the patrons of the day care center to use the subject parking lot, and does not constitute an invitation. Thus, Figueroa entered the parking lot at North Park's consent rather than at its invitation.

Suzanne Figueroa did not enter the parking lot in order to attend classes or any other activity conducted on North Park's premises. Rather, she used the parking lot as a convenient place to park while she dropped off her child at the day care center. North Park did not own the building or property housing the day care center.

(Plaintiff's Response to Request to Admit Defendant's Motion for Summary Judgment, Ex. 3.) Thus, Suzanne Figueroa's entry onto the subject premises was not connected to North Park's business.

Nor do we find that North Park received any direct economic benefit from Suzanne Figueroa's presence on the parking lot. Plaintiffs argue that North Park's allowance of the use of the lot by non-North Park personnel provided a "public relations benefit" for North Park. (Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 6; Sprincz Dep. 12, Ex. F.) In addition, North Park's continued permission for the use of the parking lot created a favorable negotiations climate when North Park considered purchasing the day care center from 1981 through 1983. (Plaintiffs' Response, pp. 6–7.) However, plaintiffs have shown no more than remote, indirect, or non-economic benefits which are insufficient to establish the status of a business invitee. *See Grimwood, supra,* 130 Ill.App.3d at 711, 86 Ill.Dec. at 8, 474 N.E.2d at 922.

We hold, therefore, that there is no genuine issue as to any material fact regarding Suzanne Figueroa's status as a licensee on defendant's property.[2] Since Suzanne Figueroa's status is not included as one of the special relationships in which the law imposes a duty on the landowner to protect against criminal attacks of third parties, North Park is entitled to summary judgment as a matter of law on Counts I and II.

■ With respect to Counts III, IV, V, and VI of the third amended complaint, plaintiffs essentially allege that North Park voluntarily undertook to provide security services and negligently performed the undertaking. Plaintiffs' attempt to impose liability on the defendant is based on the "good samaritan doctrine" as enunciated in the Restatement (Second) of Torts Section 324(A) (1965) and adopted by Illinois courts. *See Hylin v. United States,*

715 F.2d 1206, 1210 (1983) (*citing Pippin v. Chicago Housing Authority,* 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979)). The Restatement (Second) of Torts Section 324(A) provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

But the scope of a duty is limited by the extent of his undertaking. *Homer v. Pabst Brewing Co.,* 806 F.2d 119, 121 (7th Cir. 1986); *Krautstrunk v. Chicago Housing Authority,* 95 Ill.App.3d 529, 532, 51 Ill. Dec. 15, 17–18, 420 N.E.2d 429, 431–432 (1981).

In this case, North Park employed off-duty Chicago police officers for its own security force. North Park contends that there was no "undertaking" on its part to provide services to Northeastern, to Northeastern's day care center, or to the day care center's landlord, the owner of the building adjacent to the parking lot. Defendant cites Director Tannehill's deposition testimony in which he states the purpose of the security department was to protect the students, staff and property of North Park. (Tannehill Dep. 19.) However, the plaintiffs point to the testimonies of Edgar Swanson, Vice President of Business and Finance, and various security officers who allege that the security extended to persons other than staff and students who were on the North Park College cam-

---

**2.** The court notes that the common law distinction between invitees and licensees as affecting the duty owed by a property owner to entrants has been abolished by the Premises Liability Act. Ill.Rev.Stat. ch. 80, para. 301 et seq. (1984). However, that act became effective September 12, 1984 and is not retroactively applicable to this case. *See Grimwood v. Tabor Grain Co.,* 130 Ill.App.3d 708, 86 Ill.Dec. 6, 474 N.E.2d 920 (1985); *Northrup v. Allister Construction Co.,* 163 Ill.App.3d 221, 114 Ill.Dec. 431, 516 N.E.2d 586 (1987).

pus (Swanson Dep. 25, Plaintiffs' Memo. in Opp. Ex. 17; Kane Dep. 13, Ex. 18; North-fell Dep. 8, Ex. 20; Sterling Dep. 5–6, Ex. 21.)

Taking the facts in light most favorable to the plaintiffs, as we must do on defendant's motion for summary judgment, we find that North Park's security department provided protection for those persons lawfully on the premises owned by North Park. *See Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985). Although North Park had no general duty to protect against criminal attacks, it gratuitously undertook to secure protective services.

Any finding of duty, however, on the part of North Park pursuant to Restatement (Second) of Torts Section 324(A) (1965) must arise under either subsections (a) or (c), as this court has already determined that there was no pre-existing duty on the part of North Park to provide protection in this case.

Subsection (a) of the Restatement of Torts Section 324(A) provides that one who undertakes gratuitously to render services to another is subject to liability for failure to exercise reasonable care if his actions increase the risk of harm. In Paragraph 65 of Count III and Paragraph 87 of Count IV, plaintiffs attempt to meet the requirements of subsection (a). Both paragraphs allege that the existence and procedure of the Security Department of North Park College increased the risk of danger to the plaintiff.

Plaintiff presents evidence that the security procedure taken by North Park College required the officer on duty to be present at certain places during certain times on campus; such as opening doors in the morning, patroling the "bridge" location during the lunch hour, escorting North Park College personnel to the bank, and providing "special attention" to particular groups coming onto campus. (*See* Plaintiffs' Statement, pp. 9–12.) However, plaintiff presents no facts that would lead one to conclude that any actions of North Park actually increased the risk of harm over what would have been obtained without North Park's security measures. Consequently, we find that any duty on the part of North Park does not arise under subsection (a) of the Restatement (Second) or Torts Section 324(A).

We next determine whether North Park falls within the ambit of subsection (c) which establishes reliance upon the undertaking as a basis for finding liability. In *Pippin v. Chicago Housing Authority,* 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596 (1979), the Illinois Supreme Court had no difficulty in finding a cause of action stated against the security service pursuant to Section 324A(c) of the Restatement (Second) of Torts (1965).

In *Pippin,* the defendant, Chicago Housing Authority, entered into a contract with an independent security agency to provide "protective services" of the defendant's premises. The defendant's decedent was assaulted in the Authority's lobby in the presence of two security guards who allowed the altercation to take place. The Illinois Supreme Court held that the Housing Authority would be liable only for the negligent hiring of the guard services.

Addressing the extent of the security service's undertaking, the court stated:

> While it appears unlikely that Pippin relied upon Interstate's undertaking, subsection (c) speaks to reliance by the third person (Pippin) or by "the other" (the Authority) (citation omitted). By contracting with Interstate for guard services, the authority, as a matter of law, relied upon Interstate to perform its undertaking. We note the rationale for subsection (c) of Section 324(A), which appears in the comments to that section.
>
> > "Where the reliance of the other or of the third person, has induced him to forego other remedies or precautions against such a risk, the harm results from negligence as fully as if the actor had created the risk."

78 Ill.2d at 211, 35 Ill.Dec. at 534, 399 N.E.2d at 600. (*Quoting* Restatement (Second) of Torts, Section 324(A), comment e (1965).)

Plaintiffs' complaint, however, does not make any allegations of reliance by Su-

zanne Figueroa upon North Park's undertaking in hiring of its own security personnel or employing certain security procedures to protect her. Nor do plaintiffs allege in their complaint or present any facts which would demonstrate that Suzanne Figueroa's reliance induced her to forego other remedies or precautions against the risk of attack. Plaintiffs have not satisfied the reliance requirement of Section 324(A)(c) so as to give rise to a duty owed by North Park to Suzanne Figueroa. Consequently, we find that North Park owes no duty to protect Suzanne Figueroa under the Restatement (Second) of Torts Section 324(A) (1965).

Plaintiffs contend that defendant should be liable pursuant to *Phillips v. Chicago Housing Authority*, 89 Ill.2d 122, 59 Ill. Dec. 281, 431 N.E.2d 1038 (1982). In *Phillips*, the plaintiff's decedent was raped and murdered on an unoccupied floor of an apartment building at Cabrini–Green. The Chicago Housing Authority had negligently undertaken to seal the unoccupied floor prior to the plaintiff's decedent's death. The Illinois Supreme Court sustained the complaint which alleged that the Authority had voluntarily undertaken to secure certain floors and had performed the undertaking negligently.

 While liability may be based on the negligent performance of a voluntary undertaking, the allegations of "duty" and "breach" must mesh: the complaint must show that the claimed negligence falls within the scope of the alleged undertaking. *Stelloh v. Cottage 83*, 52 Ill.App.2d 168, 171, 201 N.E.2d 672 (1964). The *Stelloh* court stated:

> The undertaking alleged (that defendant's private police would give a special and added protection to the security and safety of its tenants) cannot reasonably be construed as insurance of absolute protection against crime. *Id.*

Thus, North Park's undertaking to provide security does not make it an insurer for the absolute safety of persons entering its property.

Furthermore, the injuries complained of by the plaintiffs must have been reasonably foreseeable in order to impose a duty. *Rowe v. State Bank of Lombard*, 153 Ill. App.3d 788, 797, 106 Ill.Dec. 589, 595–96, 505 N.E.2d 1380, 1386–87 (1987). There must have been more than simple possibility of the injury's occurrence, and the incident must have been foreseeable as likely to happen by a reasonably prudent person. *Id.* The court's inquiry, however, is not limited to the foreseeability of an injury, but includes the likelihood of injury and the burden of guarding against it. *Krautstrunk v. Chicago Housing Authority*, 95 Ill.App.3d 529, 532, 51 Ill.Dec. 15, 17, 420 N.E.2d 429, 431 (1981).

In an attempt to prove foreseeability, plaintiffs attach numerous police reports to their statement of material facts. (*See* Plaintiffs' Statement, Ex. 6.) However, these police reports are neither certified nor explained by affidavit. Moreover, these police reports do not show that the incidents of criminal activity described therein occurred on the subject parking lot nor do they show their locations in comparison to where the plaintiff was abducted.

Plaintiffs also offer the deposition testimonies of various present and former North Park security officers in an attempt to show the dangerous nature of the North Park College neighborhood. (*See* Plaintiffs' Statement, pp. 3–6.) Officer Edward Kane testified that the North Park College security officer on duty spends a lot of time at "the bridge" on campus to "keep the kids from molesting the girls." (Plaintiffs' Statement, Ex. 8, Kane Dep. 11–12) Officer Jacobs testified "[t]here was (sic) occasions when there were crimes against persons. I don't remember any particular instances, but there were instances." (Jacobs Dep. 28–29, Plaintiffs' Statement Ex. 9.) Officers James Griffin, Thomas Northfell, and Robert L. Latham all testified of being aware of assaults on the campus. (Plaintiffs' Statement, Ex. 10, Griffin Dep. 16–17; Ex. 12, Northfell Dep. 27–28; Ex. 14, Latham Dep. 26–27.) Such statements, however, are general in nature and do not present evidence of criminal activity at or near the parking lot where the abduction allegedly took place.

■ North Park Security Officer Robert Quaid stated in his deposition that when he was first employed by North Park College (1981), there were some problems with kids throwing bottles from the parking lot. (Plaintiffs' Statement, Ex. 11, Quaid Dep. 5, 14.) However, that incident does not give reason for North Park to foresee the abduction and attack on Suzanne Figueroa. Thus, plaintiffs have presented no evidence of specific criminal activities which would reasonably put defendant on notice of the type and severity of harm which may exist to persons on its property.

Plaintiffs also contend that the unknown assailants were on the defendant's parking lot for at least one-half hour before the abduction.[3] (Plaintiffs' Statement, p. 15.) The plaintiffs have presented no evidence by way of deposition testimony, affidavits, or otherwise to substantiate this claim. Even if true, however, plaintiffs fail to show that North Park had knowledge of their presence. Thus, plaintiffs have failed to present any credible evidence that the abduction by unknown assailants in this case was reasonably foreseeable, so as to impose a duty on the defendant.

North Park's voluntary undertaking to provide its security does not make it an insurer for the absolute safety of persons entering its property. We therefore decline to impose such a burdensome duty upon the defendant. Thus, the motion for summary judgment is granted as to Counts III through VI.

### III. *Conclusion*

We hold that North Park did not owe a duty to protect the plaintiff Suzanne Figueroa from the criminal acts of third parties as a matter of law, and therefore defendant's motion for summary judgment is granted.

---

**3.** Plaintiffs' complaint, however, alleges that the unknown assailants had been on the premises for approximately one hour before they abducted the plaintiff, Suzanne Figueroa.