2023 IL App (1st) 1221293-U

FIFTH DIVISION
June 23, 2023

No. 1-22-1293

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| QUADRELLA MAYFIELD and RAYNARD MAYFIELD, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2017 L 11091 |
| TED MAVRAKIS and IMAGINE PROPERTIES, LLC, | ) ) ) | Honorable Toya Harvey, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    ***Held***:  In this premises liability case, we hold that genuine issues of material fact regarding elevator defects prior to the accident at issue precluded summary judgment. We therefore reverse the circuit court's grant of summary judgment in favor of defendants.

¶ 2    Quadrella Mayfield was seriously injured when the elevator doors at her workplace closed on her head and neck. Mayfield sued the owners and managers of the building, alleging they were

negligent in maintaining the elevator that caused her injuries. Defendants moved for summary judgment, and the circuit court granted their motions. Mayfield contends that genuine issues of material fact precluded summary judgment. We agree, and therefore reverse the circuit court's grant of summary judgment.

¶ 3                                                    BACKGROUND

¶ 4     Mayfield worked as the Chief Financial Officer for Family Rescue, a nonprofit located on the south side of Chicago. Ted Mavrakis owned and managed the four-story building where Mayfield's workplace was located. Mavrakis is the sole member of Imagine Properties, LLC, a corporation he has used in the management of the building.

¶ 5     On June 13, 2017, Mayfield returned to work from her lunch break, and she took an elevator to the fourth floor where she worked. According to Mayfield, another passenger took the elevator to the fourth floor with her, but upon reaching the fourth floor, the other passenger apparently realized she had gone to the wrong floor. As Mayfield was exiting the elevator on the fourth floor, the other passenger allegedly pressed the button for the third floor. At that time, the elevator doors closed on Mayfield's head and neck, resulting in substantial injuries. She suffered, among other injuries, a concussion, 20% loss of vision in her left eye, four tooth fractures, and required a surgical procedure on her knee. At her deposition, she produced a detailed list of special damages, totaling $104,761.91.

¶ 6     Mayfield and her husband then sued Mavrakis for negligence. Mayfield amended her complaint three times. The four-count third amended complaint at issue in this appeal named Mavrakis and Imagine Properties, LLC as defendants. Mayfield alleged that defendants' negligence in maintaining the elevator caused her injuries and resulted in substantial damages. Her

husband claimed that because of Mayfield's injuries, he suffered injury and damages in his marital relationship with her.

¶ 7    During discovery, Mayfield deposed, among others, Family Rescue employees who had personal knowledge of the elevator's functioning, as well as an expert, who testified that the elevator could have caused Mayfield's injuries.

¶ 8    At her deposition, Elizbaeth Roa, an employee of Family Rescue since 2008 and up through the time of the incident, testified that the condition of the elevator worsened over time. She stated that a doctor's office located on the same floor as Family Rescue moved out of the building because elderly patients could not reach the office due to the elevator "not functioning" for a "majority of the time." Roa described the elevator's condition as "bad," and relayed that people were afraid to take the elevator, which would frequently start bouncing. She explained that when she herself had gotten stuck in the elevator, she pressed the emergency button, but the person who responded told her that they no longer provided service to that elevator. Roa further testified to calling the maintenance person and emailing Mavrakis several times to notify them of various issues with the elevator. She also produced emails that she sent to Mavrakis in 2017 about the elevator. Eventually, Roa started avoiding the elevator as the problems persisted and even increased. Roa also testified that another Family Rescue employee, Theresa, would contact Mavrakis and the maintenance person regarding elevator issues.

¶ 9    John Donnelly, plaintiff's elevator engineering expert, performed an inspection of the elevator at issue and testified that it did not meet industry standards. Donnelly explained that the city of Chicago employed an industry standard for the type of elevator at issue here, rather than the lower standard in a model building code. He opined that a modification should have been made to prevent the elevator doors from closing when a person engaged a floor button from within the

elevator. He further stated that the other passenger engaging the floor button inside the elevator shortened the dwell time (the time the elevator doors stay open) as Mayfield exited. In sum, Donnelly's expert opinion was that the incident could have happened as Mayfield described.

¶ 10   On May 26, 2020, both defendants filed separate motions for summary judgment. Mavrakis argued that Mayfield could not establish the existence of a defective condition with the elevator. Imagine Properties argued that Mayfield could not establish that (1) Imagine Properties owed her a duty of care, (2) the elevator had a defective condition, (3) Imagine Properties had notice of a defective condition with the elevator, (4) Imagine Properties owed the plaintiff a heightened, common carrier duty of care, and (5) Imagine Properties could be held vicariously liable for the acts or omissions of Mavrakis.

¶ 11   On January 25, 2022, the circuit court issued a brief minute order in which it granted summary judgment, with prejudice, in favor of defendants. The court did not articulate its reasoning in the order; rather, it referenced the "reasons articulated on the record on this date." We presume that the court was referring to a January 21, 2022 videoconference hearing in which it considered defendants' motions for summary judgment.

¶ 12   During the January 21 hearing, the circuit court expressed skepticism regarding plaintiffs' ability to establish that an elevator defect existed at the time of Mayfield's injury. The court stated, "What I don't necessarily hear – and this is what the Court is reading as the existence of a defect." The court relied on defendants' experts' testimony that "the door worked fine," and noted that the elevator repairs that occurred around the time of Mayfield's injury had nothing to do with the elevator's doors. The court did not articulate that it considered the testimony of other deponents, including plaintiffs' witnesses. The existence of a defect – and more specifically, a defect with the elevator's doors – appeared to be the sole inquiry in the court's consideration of the summary

judgment motions. Additionally, the court declined to draw any inference from the incomplete elevator maintenance records that defendants produced. While the court acknowledged that the records probably existed at one point, it did not find that the defendants purposefully destroyed them, so it did not draw any adverse inference from the lack of complete documentation. Mayfield subsequently moved the circuit court for reconsideration, but the court denied that motion. This appeal followed.

¶ 13                                ANALYSIS

¶ 14    On appeal, Mayfield contends that the circuit court erred in granting summary judgment in favor of defendants. She raises three claims of error: (1) the circuit court erred in granting summary judgment in favor of defendants where Illinois law imposed on them a heightened duty of care; (2) the circuit court failed to draw an adverse inference from Mavrakis' destruction of business records pertaining to the elevators; and (3) the circuit court did not acknowledge the existence of genuine issues of material fact as to the source of the elevator's defect.

¶ 15    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2020). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id*. Motions for summary judgment are

not "intended to be used as a means of weighing conflicting issues of fact." *Allstate Insurance Co. v. Tucker*, 178 Ill. App. 3d 809, 812 (1989).

¶ 16    To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). The central issue in this case is whether defendants owed a duty to plaintiff under the facts presented. Whether a duty exists in a particular case is a question of law for the court to decide. *Id*. The touchstone of a duty analysis is to determine whether a plaintiff and a defendant "stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id*. at 436. The policy considerations that inform this inquiry are viewed in terms of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* at 436–37.

¶ 17    We review a circuit court's summary judgment decision *de novo*. *Virginia Surety Co. v. Northern Insurance Company of New York*, 224 Ill. 2d 550, 556 (2007). Questions of law, such as the existence of a duty, are also reviewed *de novo*. *Vancura v. Katris*, 238 Ill. 2d 352, 383 (2010).

¶ 18    Under Illinois law, there are four special relationships that may give rise to an affirmative duty to aid or protect another against unreasonable risk of physical harm. These relationships include the relationship of common carrier(s) to passengers. *Marshall*, 222 Ill. 2d at 438. In Illinois, owners and managers of "buildings with elevators are viewed as common carriers who owe their passengers the highest duty of care." *Jardine v. Rubloff*, 73. Ill. 2d 31, 41 (1978); see also *Greenhill v. REIT Management & Research*, 2019 IL App (1st) 181164, ¶ 54. It is well established that common carriers (here, defendants) owe their passengers (Mayfield) the "highest" duty of care,

and this relationship does not end when the carrier reaches the passenger's ultimate destination; instead, the carrier must still provide its passenger "an opportunity to safely alight." *Katamay v. Chicago Transit Authority*, 53 Ill. 2d 27, 30 (1972) (citing *Pennsylvania Co. v. McCaffrey*, 173 Ill. 169, 173 (1898)). This duty of care includes "the responsibility to prevent injuries which could have been reasonably foreseen and avoided by the carrier" (*Letsos v. Chicago Transit Authority*, 47 Ill. 2d 437, 441 (1970)). As relevant here, common carriers must "use extraordinary diligence in and about the operation of [] elevators to prevent injury to passengers." *Springer v. Ford*, 189 Ill. 430, 434-35 (1901). "Common carriers are required to do all that human care, vigilance and foresight can reasonably do under the circumstances and consistently with the mode of conveyance employed, for the safety of their passengers." *Burke v. Chicago & N.W.R. Co.*, 108 Ill. App. 565, 575 (1903). Evidence of industry standards in determining the standard of care is relevant irrespective of whether a defendant's conduct conformed to code provisions. See*, e.g*, *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.,* 49 Ill. 2d 118, 125 (1971); *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331-32 (1965); *Milos v. Hall,* 325 Ill. App. 3d 180, 184-85 (2001); *Barton v. Chicago and Northwestern Transp. Co.*, 323 Ill. App. 3d 1005 (2001).

¶ 19    That leads us to the question of whether Mayfield produced some admissible evidence to show the existence of a defective condition with the elevator. As discussed above, at least two Family Rescue employees notified Mavrakis of various elevator issues over time. They explained that the elevator functioned poorly, and one witness reported getting stuck in the elevator. Additionally, plaintiff's elevator expert, Donnelly, explained that the elevator did not meet industry standards, a modification should have been made to allow sufficient dwell time, and the incident could have happened as Mayfield described. All of this was relevant and admissible evidence of a defective condition which was sufficient to defeat summary judgment.

¶ 20    As common carriers, defendants were required to exercise vigilance and foresight. Here, there is no dispute that the elevator was serviced multiple times for various issues before Mayfield's injury. Being aware of the multiple issues with the elevator's operation, defendants should have exercised vigilance to conduct a thorough inspection of the malfunctioning elevator to bring it up to industry standards. Instead, at best, the evidence shows that defendants engaged in piecemeal repairs of an old, faulty elevator that repeatedly broke down. Based on this evidence, a reasonable factfinder could find that defendants' conduct did not rise to the demanding level of care by which common carriers must abide. Moreover, as discussed above, Mayfield introduced evidence that at least two Family Rescue employees notified defendants, on multiple occasions, regarding the elevator's defective condition.

¶ 21    Based on the summary judgment hearing during which the circuit court mentioned only defendants' experts' testimony, it appears the court either ignored the existence of conflicting testimony by plaintiffs' witnesses entirely, or weighed their conflicting testimony against that of defendants' experts. In either event, neither is proper at the summary judgment stage because motions for summary judgment are not "intended to be used as a means of weighing conflicting issues of fact." *Tucker*, 178 Ill. App. 3d at 812.

¶ 22    Because we find genuine issues of material fact regarding whether defendants breached their duty of care, we need not address the question of whether Mavrakis' destruction of elevator repair records amounted to spoliation and required the court to draw an adverse inference therefrom. Similarly, we need not reach the issue of whether the circuit court erred in failing to apply the standards enunciated in *Pedrick v. Peoria & Eastern R.R. Co*., 37 Ill. 2d 494, 510 (1967), because a factfinder could find that the evidence in the record created a genuine issue of material fact as to whether defendants had notice of the malfunctioning elevator.

¶ 23                                 CONCLUSION

¶ 24    Because a reasonable factfinder could find, based on deposition testimony that Mayfield

introduced, that an elevator defect existed and defendants failed to meet their standard of care,

Mayfield's claims were legally sufficient to survive summary judgment. Accordingly, we reverse

the circuit court's grant of summary judgment in the defendants' favor.

¶ 25    Reversed.